Mr. Justice Westcjtt
delivered the opinion of the court.
Plaintiff, Sanford, in possession of the land which is the occasion of the controversy, asserts a fee simple title in himself thereto, alleges that the defendant, Cloud, holds a contract of sale of said land executed by the defendant as vendor and himself as vendee ;* that this contract originated in the fraud and covin of defendant; that it is a cloud upon his title, and that deféndant has instituted suits at law upon such contract against him, the plaintiff. He prays for a decree that the contract may be cancelled as “null and void;” that defendant may be enjoined from asserting title thereunder; that plaintiff may be protected in- his possession, and that defendant may be decreed to repay to plaintiff such sums as were paid him by plaintiff under the contract, as well as for damages.
This bill presents the case of a party in possession of land seeking the aid of a court of equity to remove a cloud upon his title.
In such cases a party is relieved upon the principle quia, timet, that is, for fear that such contract may throw a cloud or suspicion over his interest or title. The interference of a court of equity in such cases is a matter *of discretion — that is, a sound and reasonable discretion, secundum arbitrmm bom judicis.• 1 Story Eq., 693.
The jurisdiction exercised in such cases is to give a party in possession denied the privilege of trying at law the right of possession, repose, and peace. It is to relieve him against vexation resulting from a deed or contract of any character obtained under such circumstances as would induce a court of equity to put into active operation its power of “protective and preventive justice,” through the instrumentality of a decree directing the surrender and cancellation of the deed, and by affording such other and additional relief as should follow from this equity.
There is one rule of universal application which prevails in cases of this character. It is nowhere better stated than in the case of Banks vs. Evans, 10 S. & M., 62, where it is said that “he who comes'into equity to get rid of a legal title, must show clearly the validity of his own title and the invalidity of his opponent’s.” Equity will not act in such cases in the event of a doubtful title. 1 Story’s Eq. Jur., 11th Ed., sec. 700 note a; 54 Ill., 523; 44 Miss., 654; 2 Nev., 209; 10 S. & M., 62. So, also, is it a rule, both in *149 courts of law and equity, that a party to be relieved and to succeed in contests of this character must do so on the strength* of his own title, and not on the weakness of that of his adversary. 7 Wheat., 242. Being controlled by this primary rule in cases of this character, our conclusion is that the plaintiff here must fail for the reason that at the hearing he did not show title in himself. Plaintiff claims title through Finnegan. Defendant claims title both through and against Finnegan, claiming, first, through a deed from Finnegan to his grantor (such deed being alleged to be lost) and second through an adverse possession by himself and his grantor of sufficient length of time to bar the entry of Finnegan and those claiming through him under the statute of limitations. c
Anterior to 1850 the legal title to this land was in Joseph Finnegan, he having purchased a Spanish grant embacing this land of Moses E. Levy, Levy’s title being admitted by the United States. Constant Potter, the grantor of defendant Cloud, having settled upon and entered the land under the armed occupation act of August 4, 1842, received a patent for the land from the United States on the 26th June, 1850. It was discovered that the United States had not title at the date 'of this patent and the patent was subsequently cancelled and a float issued to Potter in lieu thereof. Finnegan, plaintiff’s grantor here, who had as stated, acquired the land in 1848 or 1849 from Levy, found Potter in possession in 1850 or 1851 claiming under his patent. Finnegan “did not propose to remove him, but agreed that if Potter would give him his claim against the government he, Potter, might remain.” This Potter did, and Finnegan swears that while he does not 'recollect positively, still he was always of the impression that he made Potter a deed for the land, that he always treated the land as Potter’s, that he never claimed any ownership or exercised or attempted to exercise any control over it, and that Potter held adversely to him. Potter was. therefore in adverse possession as against Levy or Finnegan, under claim of title from the United States in 1850, and his possession after that time was adverse to Finnegan and his grantees. On the 15th day of May, A. D., 1860, the land was conveyed by Potter to Cloud, the defendant in this suit. Cloud went into possession under deed from Potter, and so remained in possession up to the time of plaintiff’s entry into possession in the spring of 1871.
Sanford the plaintiff claims title under a warrantee deed from Finengan dated the 11th day of May, A. D., 1870, and a quit claim deed from Finnegan dated the 27th day of April, A. D., 1871. These deeds cover the Spanish grant, of which this land was originally a part. In the warrantee deed Finnegan excepted from the grant “those tracts or parcels of land heretofore conveyed out of said grant by the said Joseph Finnegan to the parties hereinafter named to-wit: a tract of one hundred and sixty acres to the heirs and representatives of Henry A. Crane, konwn as the Mellonville tract, and one hundred and sixty acres to the heirs and representatives of Constant Potter” The quit claim deed covers the whole of the Levy grant with an exception of those tracts or parcels of land heretofore conveyed out of said grant by the said Joseph Finnegan. The quit claim deed was without consideration. Some questions were raised in argument as to the effect of these exceptions, and there is testimony in the record going to establish knowledge by Sanford as to what was intended by them, but we examine the question of title without reference to the matter.
It is clear from the above statement of the title of the respective parties, that Constant Potter held admitted adverse possession of this land under claim of title from 1850 or 1852 up to the date of his deed to Aaron Cloud, May 15, 1860, and that Cloud held adverse possession under a claim of title derived from Potter from that date up to the 13th December, A. D., 1861, the date at which the statute of limitations was suspended in this State. This is a period of more than seven years. The statute of limitations in force in this State at that time was the act of 1848, chapter 142, laws. This act limited the right of entry of Finnegan, plaintiff’s grantor, to within seven years next after his right or title accrued as against all and every adverse possession of the land for the term of seven years.
We have in this case seven years possession by Cloud and those under whom lie holds adverse to Sanford and those under whom he claims, and as no legal disability such as operates to suspend the statute is shown or claimed to exist on the part of Sanford’s grantors, it is clear that Sanford had no title as against Potter and his grantors. The only doubt as to Cloud’s title from Potter which the record discloses is an allusion in plaintiff’s testimony to the question of an outstanding right of dower in the wife or widow of Potter. There is no allusion to this matter in the bill, or any of the pleadings. Among the proofs before the Chancellor at the hearing, was a conveyance by a person purporting to have been the wife of Potter at his death, reciting her subsequent marriage and divorce. This conveyance appears to be sufficient. It is executed in proper form and conveys to Cloud any interest which she hád in the property.
It is thus clear that upon the hearing it not only appeared that plaintiff had no title, but it was apparent, to the court that the possessory title was in Cloud, and that the right of entry of Sanford and his grantors was barred.
Plaintiff having no title upon which this contract of sale could be a cloud, it follows that the bill should have been dismissed at the hearing.
Before leaving this question it is proper that we should say more of the nature of Potter’s title as against Finnegan, as well as something concerning the alleged fraud of Cloud in the contract of sale, and the nature of Sanford’s possession.
We have remarked that Potter’s possession was adverse and under a claim of title. That it was adverse in its nature is clearly established by the testimony. He first claimed under a patent from the United States. That the title was not at that time in the United States, did not change the nature of his possession. (4 Sand., Chy., 633.) The title not being in the government or sovereign, an adverse possession under • a claim of title could be effective, and a claim under a patent erroneously issued is a claim of title. It is not necessary that there should be a rightful title. That Finnegan exbcuted a deed to Potter is not clearly established. Finnegan is under the impression that he did; but we deem this immaterial. Potter claimed to own the land. It was not necessary that he should have claimed under a* written contract, and looking to the testimony of Finnegan, there was unquestionably a written or parol contract by Potter with Finnegan. Potter claimed the fee and had adverse possession. Finnegan in all his transactions with Sanford admitted and advised Sanford that he claimed no title to the land as against Potter. Here was an entry .and continued adverse possession under a claim of title. It was not necessary that he should have claimed title under a paper writing, or if he did so claim, that it should be a good conveyance. 8 Cowen, 589; 3 Watts, 72.
As to the alleged fraud upon the part of Cloud in the matter of this contract of sale with Sanford. We do not see evidence of anything more than error or mistake upon the part of Cloud. We cannot infer fraud from evidence entirely consistent with simple mistake. In addition to this, however, the bill here is not for a simple rescisión upon *150 an equitable basis of restoration to rights and relations existing anterior to the contract of sale.
As to Sanford’s possession. The nature of this possession is a matter which may be properly considered under the bill and answer in this case.
Anterior to the quit claim deed of Finnegan, under which Sanford claims possession, he, Sanford, treated with Cloud as the owner of the land, and by virtue of Cloud’s covenants and a receipt by Cloud of two hundred dollars, he was given the right of possession as against Cloud. He took possession. As between himself and Cloud his possession must be referred to this contract without reference to his intentions and wishes not made known to Cloud at the time of his entry. Cloud did not give him possession under any adverse elaim of title, and whatever may have been his private ulterior purpose, his entry, so far as Cloud is concerned, must be referred to the contract under which Cloud agreed that Sanford might take possession, and Sanford agreed to take possession. If he wished to contest Cloud’s title and rights, he should have done so not by an apparent and agreed admission of them, or by an acting in subordination to them. He obtained his possession, so far as Cloud was concerned, by an admission of Cloud’s right, and he is es-topped to deny that right.
These parties are privies in estate. The rule we mention is a general one. It should not be defeated by subtle and refined distinctions of the vendee as to his intended method of entry into possession. If lie gets the covenants of a party yielding possession, and enters into covenants looking to his taking possession, a court of equity will refer his entr}', so far as this party is concerned, to such covenants. It was while thus entitled to possession, or after possession of the the land was taken, that Sanford, without consideration, received from Finnegan the quit claim deed to the tract of land of which this land was originally a part.
Independent of other facts connected with this transaction, as established by the testimony, Sanford thus in possession purchasing an outstanding title, (if such it had been,) is entitled to nothing more than its fair and bona fide cost. In this case it coat Sanford nothing. 1 Sug. on Vend., 642; 4 Mon., 297; 2 John., 33; 3 S. & M., 694; 10 S. & M., 501; 1 Barb., 115; 34 Penn. State, 146.
This rule results from “the relation which it has been found expedient to establish between vendor and vendee to preserve the confidence which, in matters of contracts, ought to exist between man and man, and to prevent undue advantage from information acquired by means of such contracts.” Says Chancellor Kent, speaking of this subject, “ it is a general principle pervading the cases, that if a party who lias a limited interest gets an advantage by being in possession ‘’or behind the back’ of the party interested in the subject, or by some contrivance in fraud, he should not retain the same for his own benefit, but shall hold it in trust.” 2 John. Chy., 33.
In. view of the title of the plaintiff as thus disclosed, as well as in view of the nature of his possession, it is apparent that the plaintiff had failed to make out’his case, and the bill should have been dismissed.
Instead of dismissing the bill, the Chancellor directed, substantially, a performance of the contract, which plaintiff sought to set aside. There was no cross bill by the defendant under which he could obtain relief based upon equities which the proofs may have established. The case is not one for an account, or one of such character- as to constitute it an exception.to the rule, that the defendant, to have affirmative relief, must resort to his cross bill. Upon a bill by a vendee in possession of land under an agreement tci purchase seeking to set aside the contract of sale as a cloud upon his title, the defendant vendor cannot, without cross bill, have a decree for specific performance of the contract. Litt. Sel. Cases, 245; Wooten vs. Bellinger, 17 Fla., 289; 3 Daul. Chy. Pldg, and Prac., 1680; 11 Wheat, 446; 2 Mad. Chy., 329; 2 Atk., 133; 1 Ball & Beat., 217; 13 Ves., 546; 15 Ib., 525. The conclusion of the court is, therefore, that the decree herein rendered should be reversed and the cause remanded, with directions to dismiss the bill.
Appellant’s counsel think that we should determine and settle the rights, of the parties. We have nothing calling into action the jurisdiction of the court in this case except the bill. The plaintiff here seeks a cancellation of this agreement. This is the prayer of the bill. Ho case is made by the bill looking to the validity of this contract of sale. The whole structure of the case is based upon an utter repudiation of it. To treat of this agreement as effective and ■valid, would be inconsistent with the relief prayed as well as with the case made by the bill. The only proper decree was to dismiss the bill. Litt. Sel. Cases, 146; Story Eq. Pldg., 41; 6 Harr. & John., 29; 10 Pet., 182; 2 Pet, 595; 1 Daniel Chy. Pldg. and Prac., 383.
The decree is reversed, and the case will be remanded with directions to dismiss the bill.