Willie H. Levy v. George W. Ladd et al.—Syllabus.

WILLIE H. LEVY, APPELLANT, vs. GEORGE W. LADD ET AL., APPELLEES.

CLOUD OF TITLE—WHO ENTITLED TO REMOVE—VOID TAX TITLE NO BASIS FOR THE REMEDY.

1. He who comes into equity to get rid of a legal title as a cloud upon his own must show clearly the validity of his own title, and the invalidity of his opponent's. Equity will not act in such cases in the event of a doubtful title. And a party to be relieved and to succeed in contests of this character must do so on the strength of his own title, and not on the weakness of his adversary's.

2. The well-settled rule is, that where the title of a party to land is *legal* in its nature, he must be in possession of the land before he can claim the aid of a court of equity to remove a cloud from his title, unless the land is wild, unimproved and unoccupied.

3. Where there is a material variance between the description of the land in a tax deed, and the description given to it in the assessment roll, and in the colletor's advertisement of it for tax sale, and in his certificate of tax sale and purchase, such tax deed is void.

4. Where several tracts or parcels of land are assessed and sold for taxes, and the amount of taxes assessed upon each of said tracts is not set down or given opposite thereto, respectively, in the assessment roll and in the collector's advertisement of sale, but the aggregated taxes assessed on all the different tracts is given only, a tax deed predicated thereon is void.

Appeal from the Circuit Court for Alachua county.

The facts in the case are stated in the opinion of the court.

*S. Y. Finley*, for Appellant.

*W. W. Hampton*, for Appellees.

TAYLOR, J.:

The appellant, Willie H. Levy, filed his bill in equity in the Circuit Court of Alachua county on the 25th day of July, A. D. 1887, against the appellees, alleging therein that George W. Ladd was a resident of the State of Maine. That on the 5th day of May, 1884, divers fractional subdivisions of sections 11, 12, 2 and 3, in township 7 South, of range 18 east, in Alachua county, Florida, were sold by the collector of revenue for Alachua county at public auction for the unpaid taxes thereon for the year A. D. 1883, regularly and lawfully assessed according to law, to the State of Florida, there being no bidders for the same at said sale. That at the time of the assessment and sale of said lands for said taxes, the defendants Daniel S. Ladd and G. W. Ladd, brothers, residing in Franklin county, Florida, claimed the ownership in fee of said lands. That on the 15th day of April, 1886, he, the complainant, purchased from the State of Florida all the right, title and interest of the State in and to said lands, as will more fully appear by reference to the tax deed of said State to your orator, which said tax deed was duly recorded at page 301 of tax-title book "B," in the public records of Alachua county, Florida, on the 15th day of April, 1886, a certified copy of which said deed is attached to the bill as an exhibit thereto and as part thereof. That at all times since the said 15th day of April, 1886, he has been and is now in possession of said land. That in May, 1886, the defendant George W. Ladd, wrongfully and unlawfully caused a levy to be made upon said lands under and by virtue of an execution issued out of the Circuit Court of the United States for the Northern District of Florida, upon a pretended final judgment of said court in

favor of the said George W. Ladd, and against one Daniel Ladd, deceased, the date of said pretended judgment being October 4th, 1869.   That by reason of said levy as aforesaid the United States Marshal for the Northern District of Florida did on the 7th day of June, 1886, wrongfully and unlawfully, and against the protest of your orator, sell said lands in regular form of law to the defendant George W. Ladd, and on the 18th day of June, 1886, executed his deed in pursuance of said pretended sale to the defendant. George W. Ladd, and the same was regularly recorded in the public records of Alachua county in book "Z" of deeds, at page 32, a certified copy of which is attached to the bill as an exhibit.   That said Marshal's deed to the defendant, George W. Ladd, is regular upon its face, and that the same is a cloud upon the title of your orator to said lands, and that he has no adequate remedy at law in the premises.   The prayers of the bill are, that so much of said U. S. Marshal's deed as relates to and effects the lands purchased by complainant from the State be adjudged and decreed to be void, and of no force or effect.   That complainant be adjudged and decreed to have a good and perfect title to said lands as against the defendant; and that the claims of the defendants therein be forever barred.   There are, besides, the prayer for general relief, and for subpoena.

Attached to the bill is the tax deed to said lands issued by the clerk of the Circuit Court of Alachua county to the complainant, dated April 15th, 1886, that recites that the lands were sold by the collector to the State of Florida on May 5th, 1884, for the taxes assessed for the year 1883, and that the complainant had purchased the right. title and interest of the State by paying to the Comptroller the sum of thirty dollars.

Attached also to the bill is a deed from the U. S. Marshal for the Northern District of Florida conveying the said lands to the defendant, George W. Ladd, which deed is in due form and dated June 18th, 1886, and recites that it is made by such Marshal in pursuance of and by virtue of a sale of said lands by him under an execution issued out of the Circuit Court of the United States for the Northern District of Florida, dated the 4th day of October, 1869, in favor of George W. Ladd, against one Daniel Ladd.

The defendant, George W. Ladd filed an original and amended answer to the bill, in which he admits that he is a resident of the State of Maine. He admits the sale of the lands by the collector of revenue for the taxes assessed thereon for the year 1883, but denies that said taxes were lawful, or were lawfully assessed. He admits that the complainant did on the 15th day of April, 1886, attempt to purchase the right, title and interest of the State in and to said lands acquired under said illegal sale of 1884, for taxes of 1883, and that the Comptroller attempted to make said transfer and that the certificate issued by the collector of revenue, (No. 83), to the Comptroller, was attempted to be transferred to him by the Comptroller, and that a deed was issued to the complainant by the clerk of the Circuit Court for Alachua county as alleged; but, the answer charges, the said transfer by the Comptroller was and is unauthorized and in violation of the statutes of Florida, and that the said deed predicated thereon is illegal and void. He denies that the complainant has at all times since the 15th day of April, 1886, been in possession of said lands, but asserts, on the contrary, that he has never at any time been in the actual possession of said property or any part thereof. The levy upon the lands under a judgment rendered, in the

U. S. Court in favor of George W. Ladd, against Daniel Ladd, on the 4th day of October, 1869, by the U. S. Marshal, and the sale, purchase and conveyance thereof by him at such Marshal's sale is admitted. The answer alleges that the said judgment rendered on the 4th of October, 1869, in the U. S. Court, under which said land was sold, was in all respects regular and a valid lien upon said lands that, at the time, were owned and possessed by Daniel Ladd, the defendant in said judgment, and that the execution issued therefrom, and the said Marshal's sale thereunder, were in all respects legal and regular; and alleges that he, the defendant, was on the 25th day of July, 1887, and is now in the lawful possession of said lands. The amended answer alleges the assessment of said lands made in 1883 to be unlawful and void because the lands were assessed to a firm of persons that did not exist, and who, at the date of said assessment, neither owned said land, nor were in possession or occupancy thereof. That the said sale of said lands were illegal and void because the same were not advertised for sale in conformity to Section 48 of Chapter 3413, laws of Florida. That the said lands, though embraced in several different sections, were all sold in a body, and were so advertised, and the said collector did not make out a statement of all such real estate specifying the amount due on each parcel, as required by Section 48 of said Chapter 3413, laws.

Replication to the answer as amended was filed, and the cause was referred to a master to take testimony and report the same to the court. After the testimony was all taken and reported to the court a final hearing was had, at which the court rendered a final decree dismissing the complainant's bill at his costs of the suit, and from this decree the complainant appeals.

The errors assigned are, that the decree is contrary to law and equity, and is not sustained by the evidence; and because no sufficient defense to complainant's suit is shown in the record.

As proof of his title to the lands, the complainant introduced a certified copy of the tax deed made to him by the clerk. To sustain the allegation of his possession of the land, the complainant testified that he resided in Newnansville, in Alachua county, Florida. That he purchased the land in April, 1886, and soon after the purchase and before the commencement of this suit, he appointed an agent to prevent any trespasses upon said land, and that this agent made negotiations for the cultivation of any or all of said land under his directions. That ever since the appointment of said agent he had exercised exclusive control and dominion over said land, and that no one else had attempted to exercise control over the same. That his control and dominion over said land was known by a great many of the neighbors. That he did not know George W. Ladd, of Bangor, Maine. That said Ladd had never been in possession of said land, nor any part thereof. That the agent he appointed to look after the land was Mr. V. H. Ellis. That said land was six or eight miles from where he lived. That he had fenced three or five acres of said land, which part thereof he so fenced he can not describe. That this fencing he had done in 1889, but that negotiations were on foot to have had it fenced in 1886. That he gave a party, through his agent Ellis, the privilege to cultivate said lands on condition that he put a fence around it; this party did not cultivate it, as he would not agree to the condition to fence it. None of it was cultivated in the years 1886, 1887, 1888 or 1889, but he gave the privilege to different parties through his agent to cultivate

on terms above stated. In 1889 negotiations were on foot directly from him with one Lee Ellis to cultivate the land. None of the lands was under fence when I bought it; some of it is open pine land, some mixed, and some an old field grown up in saplings. That he was a merchant at Newnansville. That on the 11th and 18th of June, 1886, he and his agent were in possession of said land. At that time there was no fence on said land, and he was living at Newnansville.

V. H. Ellis for the complainant testified that he resided within a half mile of said lands, and had lived there for about thirteen years. No one lived on or was in possession of these lands for ten or twelve years prior to April 15th, 1886. Since the 15th day of April, 1886, the complainant has claimed to exercise ownership over said land. He exercised his control and dominion over said land by employing me as his agent to get the land improved. I have acted as his agent in that respect. I have attempted to negotiate with parties on behalf of complainant for the cultivation and improvement of said land, but have failed to get parties to enter upon said land or to cultivate it on account of the scarcity of timber and difficulty of fencing it. It is generally believed in the neighborhood to be Levy's land. The reason the people believed the land to belong to Levy is because of the dominion he exercises over it. As the agent of Mr. Levy I fenced about two acres of this land in the summer of 1889, and it is the only part of said land that has been fenced since April 15th, 1886. On the 20th of July, 1887, none of said land was under fence. I do not know whether or not George W. Ladd has employed any agent since April 15th, 1886, for the settlement and improvement of said land. This property is what is known as a part of the Ladd plantation. J. S. Dupis, of near

Newnansville, has been the agent for a good many years of the estate of Daniel Ladd. I have been the agent of the complainant for about two years. There is no understanding between complainant and myself as to compensation for my services as agent. Nothing has been planted on the two acres that I fenced. I fenced it because he employed me to do so. He said he wanted to bring it into cultivation. He has not attempted to fence any more of it. The land in controvery is only a part of what is known as the Ladd plantation. Several tracts of land are known as parts of the Ladd plantation, and are under fence and in possession of different claimants, but do not embrace any of the land in question.

On behalf of the defendants, J. S. Dupuis testified that he had lived for about ten years about a half mile from said lands, near one corner thereof. That he did not know Daniel Ladd in his life-time, but knew his sons through correspondence with them. That he represented the estate of Daniel Ladd, as agent, for these and other lands for five or six years previous to the sale thereof by the U. S. Marshal to George W. Ladd. That the estate of Ladd, through him as agent, exercised ownership and possession over said lands for five or six years prior to said sale. That no part of the said land was under cultivation during that time. No one was in actual possession of said land on July 23rd, 1887. There was no one in actual possession thereof during the years 1887 and 1888, but Levy claimed to have a tax deed. Up to the time of Levy's tax title the land was regarded by the neighborhood as the property of the estate of Daniel Ladd, but since that time it has been regarded as being in controversy. Neither Daniel Ladd, whose estate I represented, nor any of his heirs or descendants, have lived on said

lands at any time during the past ten years, but previous to the past ten years he had tenants on it, as I have understood, and as was generally understood in the community. I can not swear that Daniel Ladd or any of his heirs or representatives, or agent, were in actual possession of said land from the beginning of the year 1869 up to the present time, but during the time I have testified to as agent; I acted in such capacity, keeping off trespassers, but never at any time actually occupying it myself, or having any one under me as agent in actual occupancy. As agent I sold some land belonging to the same tract, but none of the land in controversy. So far as I know the land in question was unoccupied from the beginning of the year 1869 up to the present time. Levy never lived on said land.

The defendant filed in evidence a certified copy of the certificate of tax sale made by the collector of revenue on May 5th, 1884, to the Comptroller, with the endorsement thereon of an assignment and transfer thereof by the Comptroller to the complainant, dated March 31st, 1886, upon which the clerk of the Circuit Court issued the tax deed to complainant. The defendant also introduced in evidence the tax asssessment rolls of Alachua county for the year 1883, and filed in evidence a certified extract therefrom relating to the lands in question, showing that they were assessed as follows:

"Ladd, G. W. & Brother.

| J. S. Dupius, Agt. | Section. | Township. | Range. | Acres. | Assesssed Value. | Total Value. | Taxes. |
|---|---|---|---|---|---|---|---|
| " 3 S. E. W. of N.W. | 11 | 7 | 18 | 160 | 320 | | |
| " & S. E. W. of Lots | 12 | 7 | 18 | 240 | 480 | | |
| " 2 & 3 | 2 | 7 | 18 | 80 | 166 | | |
| Lot 2 | 3 | 7 | 18 | 67 | 134 | 1100 330 | 440–110–550 330–660–1320." |

The defendant also filed in evidence a certified extract from the tax sale book of record, showing that the lands were advertised for sale and sold by the collector on May 5th, 1884, as follows:

| 85. Ladd, G. W. & Brother. | Section. | Township. | Range. | Acres. | Amount Sales. |
|---|---|---|---|---|---|
| S. E. ¼ | 11 | 7 | 18 | 160 | |
| W. ¼ of N. W. ¼ & S E. ¼ | 12 | 7 | 18 | 240 | |
| W. ¼ of Lots 2 & 3 | 2 | 7 | 18 | 80 | |
| Lot 2 | 3 | 7 | 18 | 67 | 11–120.89 |

From the view we take of the case it becomes unnecessary to recite any other parts of the evidence in the cause that consisted chiefly of oral examinations of witnesses upon points that do not affect the questions upon which the case must go off.

The settled rule repeatedly announced by this and other courts, that prevails universally in cases of this character is, "he who comes into equity to get rid of a legal title, must show clearly the validity of his own title, and the invalidity of his opponent's. Equity will not act in such cases in the event of a doubtful

title." So also is the rule well settled, "that a party to be relieved and to succeed in contests of this character must do so on the strength of his own title, and not on the weakness of his adversary." Sanford vs. Cloud, 17 Fla. 557 and citations; Marvin vs. Hampton, 18 Fla. 131; Benner vs. Kendall, 21 Fla. 584. Another rule equally well settled in such cases is, that where the title of a party to land is legal in its nature, he must be in possession of the land before he can claim the aid of a court of equity to remove a cloud from his title, unless the land is wild, unimproved and unoccupied. Sloan vs. Sloan, 25 Fla. 53, 5 South. Rep. 603; Graham vs. Florida Land & Mortgage Co., 33 Fla. 356, 14 South. Rep. 796. We think the decree of the court below was in entire consonance with these principles of law.

The complainant's tax title is void, if upon no other ground, because of a decided and serious variance as disclosed by the record here upon appeal, between the *description* given to the lands on the tax assessment roll and that given to it in the collector's advertisement of sale and in his certificate of tax sale, and in the tax deed. The description in the assessment roll and that in the certificate and tax deed are not at all the same. Carncross vs. Lykes, 22 Fla. 587; Grissom vs. Furman, 22 Fla. 581. It is further void because the amount of taxes assessed upon each of the separate and several tracts of land are not set down in separate columns opposite each respective tract, but the total taxes assessed upon all the aggregated tracts alone is given, in the assessment roll and in the collectors advertisement of sale. Graham vs. Florida Land & Mortgage Co., *supra.*

26

402      SUPREME COURT.

The complainant neither showed himself to be in possession of the lands, nor that he had any title thereto that could become clouded by the titles of another, and for these reasons the decree of the court below dismissing the bill was entirely proper, and is, therefore, affirmed.