F. S. YAGER, *Appellant*, v. A. M. McNEILL, *et al.*, *Appellees*.

1. The power of the legislature to grant alternate sections of swamp and overflowed lands within six miles on each side of a proposed railroad upon the conditions named in Section 29 of Chapter 610 Laws of Florida is not doubted, if the grant does not interfere with vested rights or with the payment of the necessary expenses of selecting and managing the lands of the Internal Improvement Fund.

2. Under Section 3 of Chapter 3167 Laws of Florida the title to the alternate sections of land granted by said Chapter did not vest until the completion of the grading and laying on the crossties of ten miles of the railroad opposite the lands, provided that for every forty miles of road so completed, ten miles shall be ironed and equipped and in operation; and the provision of section 4 of the Act that upon the filing of the survey of the route, the alternate sections of lands granted shall be withdrawn from sale does not of itself give to the grantee any prior right or title to the particular lands.

3.  A deed from the Trustees of the Internal Improvement Fund
    to land included in a grant of alternate sections on each side
    of a railroad, issued after the survey of the route has been
    filed but before the road opposite the deeded land has been
    completed, carries title to the grantee in the deed as against
    the railroad company.

This case was decided by the court En Banc.

Appealed from the Circuit Court for DeSoto County.

The facts in the case are stated in the opinion of the court.

*Leitner & Leitner,* for Appellant;

*Treadwell & Treadwell* and *Wilson & Swearingen,* for Appellees.

WHITFIELD, C. J.—On October 2, 1905, the appellees filed a bill in equity against the appellant in which it is alleged in substance that by Act of Congress of September 28, 1850, the United States conveyed to the State of Florida the swamp and overflowed lands therein, including that in controversy, for the purpose of reclaiming said lands; that by chapter 3167 Acts of 1879 the legislature granted to the Gainesville, Ocala & Charlotte Harbor R. R. Co. alternate sections of land granted to the State by said Act of Congress lying on each side and within six miles of the line of railroad to be constructed by said company; that section 4 of Chapter 3167 provided "that upon the filing with the board of trustees by said company of a survey of the route which may be selected by said company, or any twenty miles thereof, the trustees shall withdraw at the election of said company or its president. odd

26—Vol. 60.

or even numbered sections within such limits, along or opposite the route or section thereof of twenty miles so surveyed, from sale; provided, however, that the same shall be restored to sale by the Board, if the survey of the entire route is not filed within twelve months from the passage of this Act;" that the said railroad company in good faith in compliance with the said act, within two years after the passage of the same, commenced work upon its said railroad, and filed with the Board of Trustees of the Internal Improvement Fund, within the time specified in said act, a survey of the entire route of its said railroad; that upon the filing of the said survey of the route of said railroad, which was done on the fourth day of March, 1880, the President of the Gainesville, Ocala & Charlotte Harbor Railroad Company, forwarded to the Board of Trustees of the Internal Improvement Fund a copy of the resolutions of the directors of the said railroad company, selecting for said company the odd numbered sections of the swamp lands within six miles on each side of their route filed with the said Board of Trustees, and requested that the same be withdrawn from the market; that the described land in controversy is within six miles of the route of the said railroad as shown by the survey of said route filed as aforesaid; that afterwards, the exact date being unknown, the Florida Southern Railway became entitled to all the rights, privileges and property of the Gainesville, Ocala & Charlotte Harbor Railway Company, including the land grant; that the Florida Southern Railway did within the time specified in Chapter 3167 Laws of Florida, and its amendments, build and equip a railroad along the line set forth in the survey filed as aforesaid to a point on Charlotte Harbor, to-wit, Punta Gorda, Florida; that the Florida Southern Railway did comply with all the provisions of Chapter 610 Laws of

Florida and the amendments thereto as to the manner of constructing said road and drainage required of it by said act; that it was provided by section 3 of Chapter 3167 that upon the completion of the grading and laying on of cross-ties of ten miles of said road its branches and extensions the title to said alternate sections opposite said ten miles of road so graded and furnished with cross-ties should vest in said company; that complainants are the owners of all the right, title and interest, either legal or equitable acquired by the said Florida Southern Railway Company, in and to the described lands, the mesne conveyances from the Florida Southern Railway Company being stated; that for three years last past complainants have been in open, actual adverse occupancy and possession of said land, and have in good faith made valuable improvements on said land of the value of $15,000; that while the Florida Southern Railway Company was at work upon its railroad aforesaid, and after the survey of said road had been filed as required by the statute, and after the trustees had been requested to withdraw from sale the odd numbered sections along the route indicated by said survey, within the six-mile limit thereof, in which is embraced the described land, "one Sidney I. Wailes transferred to John W. Malone certain certificates or contracts entitling the holder thereof to locate a certain amount of land, said certificates or contracts being given to the said Sidney I. Wailes to compensate him for representing the State of Florida before the Land Department at Washington;" "that the said John W. Malone after filing of the survey of the route of said railroad as above set forth, and the request by the said railroad that said land be withdrawn from sale, and with full knowledge of the rights of said railroad company both constructive and actual did sometime in the year 1885, present the certificates above

referred to to the Internal Improvement Fund of the State of Florida, and asked that a deed be executed to him for the lands heretofore described;" "that the said trustees, contrary to all equity, and in violation of the Act of Congress granting said lands to the State, did make and execute to the said John W. Malone a deed conveying the above described land;" "that at the time of the conveyance by the said trustees of the Internal Improvement Fund to the said John W. Malone, the Florida Southern Railway Company had not completed the ten miles of road by or through the lands above described, but were at that time working on said road, as indicated by its survey filed with the Board of Trustees of the Internal Improvement Fund;" that by stated mesne conveyances from John W. Malone, the defendant has the legal title to said lands; that defendant and each of his mesne grantors had notice of complainant's equitable rights; that defendant has never made any objection to complainant making the valuable improvements referred to; that on August 11, 1905, defendant instituted ejectment proceeding against complainant for the land in controversy; that though defendant has the legal title the complainants are entitled to have a trust in their favor declared in the lands. The prayer is that the defendant be enjoined from the further prosecution of the action of ejectment referred to and that a trust in the lands be decreed, and a conveyance made to the complainants.

A demurrer to the bill of complaint on the grounds of no equity and of laches was overruled and the defendant appealed.

Chapter 610 Laws of Florida approved January 6, 1855, set apart so much of the 500,000 acres of land granted to the State for internal improvement purposes by Act of Congress of March 3, 1845, as remained unsold, and also

all the swamp and overflowed lands granted to the State
by Act of Congress approved September 28, 1850, as a
distinct and separate fund to be called the Internal
Improvement Fund of the State of Florida; and for the
purpose of assuming a proper application of said fund for
the purposes declared the lands and all the funds arising
from the sale thereof, *"after paying the necessary expenses
of selection, management and sale thereof,"* were irrevoca-
·bly vested in five trustees who were State officers and their
successors in office, to hold the same in trust for the uses
and purposes therein stated, with power to sell and trans-
fer said lands.  By section 29 of Chapter 610 the right was
reserved to the legislature to grant alternate sections of
swamp and overflowed lands for six miles on each side of
a railroad to railroad companies on the conditions therein
mentioned.  See Section 621 Gen. Stats. of 1906; Trustees
of the Internal Improvement Fund v. St. Johns Railway
Company, 16 Fla., 531.

The power of the legislature to grant alternate sections
of swamp and overflowed lands within six miles on each
side of a proposed railroad upon the conditions named in
Section 29 of Chapter 610 Laws of Florida is not doubted,
if the grant does not interfere with vested rights or with
the payment of the necessary expenses of selecting and
managing the lands of the Internal Improvement Fund.

It is not alleged that a patent was ever issued to the
State for the lands in controversy, and the character of
the lands as swamp and overflowed does not appear except
by the mere allegation that the lands are of those conveyed
by the Act of Congress of September 28th, 1850, granting
to the State the swamp and overflowed lands in the State.

The Act of Congress expressly required a patent to be.
issued.

The allegation that after the survey was filed and after

the trustees had been requested to withdraw from sale the odd numbered sections along the route indicated by the survey within the six-mile limit thereof, embracing the land in controversy, S. I. Wailes transferred to John W. Malone "certain certificates or contracts entitling the holder thereof to locate a certain amount of land, said certificates or contracts being given to Wailes to compensate him for representing the State of Florida before the Land Department at Washington indicates that expenses or obligations had been incurred by the trustees for selecting and managing the lands of the fund or for other purposes of the trust, and for aught that appears the certificates or contracts on which deeds to the land were issued may have been given to Mr. Wailes for services in selecting the lands or for other purposes of the trust before the filing of the survey mentioned or even before the grant was made of the alternate sections.

Even if the certificates or contracts referred to were issued to Mr. Wailes after the survey was filed and the request made that the odd sections be withdrawn from sale, the expenses and prior obligations of the fund should first be paid, and all the lands of the fund were subject to the payment of such obligations and expenses. It is also alleged that when the deed was issued to John W. Malone, the railroad company had not completed the ten miles of road by or through the described lands, but were at that time working on said road, as indicated by its survey filed as aforesaid. Under this allegation the railroad company was not entitled to a deed for the alternate sections, because section 3 of Chapter 3167 gave a title and a right to deeds only upon the completion of the grading and laying of cross-ties of ten miles of the road opposite the land referred to: Provided that for every forty miles so completed, ten miles shall be ironed and equipped and

in operation. The duty to withdraw the lands from sale on the filing of the survey does not prevent the issuing of deeds to the lands in payment of expenses in selecting and managing the lands of the fund or for any purpose having a prior right to the legislative grant to the railroad company upon the conditions named. The railroad company under the grant of the alternate sections had no prior right at least before the completion of ten miles of the road as required by law opposite the particular lands. From the allegations of the bill admitted by the demurrer it does not appear that the conveyance of the lands to John W. Malone as alleged is a violation of any vested right of the complainants or their predecessors who have shown no equitable right to and no conveyance of the title granted to the State by the Act of Congress.

Apart from the question of laches, the complainants do not show a clear right to the relief prayed for, and the demurrer should have been sustained.

The order appealed from is reversed.

TAYLOR, SHACKLEFORD, HOCKER, and PARKHILL, J. J., concur.

COCKRELL, J., concurs in the result.