MELLIE M. MORGAN, *Appellant,* v. WILLIAM E. DUNWOODY, *Appellee.*

Opinion Filed December 17, 1913.

Morgan v. Dunwody.—Opinion of Court.

1.  In proceedings to remove a cloud upon title to real estate, the complainant must show with clearness, accuracy and certainty the validity of his own title, and the invalidity of the title of the opposing parties.

2.  In suits to cancel or annul the title to real estate claimed to be a cloud upon the title of the complainant, the latter to succeed must do so on the strength of his own title, and not on the weakness of the opposing title. Equity will not aid in such cases where the complainant's title is doubtful.

3.  Where the complainant's title is a legal one, he must be in possession in order to maintain a suit in equity to remove a cloud from such title, unless the land is wild, unimproved and so unoccupied as not to destroy the constructive possession that follows the legal title.

4.  A deed of conveyance from the Trustees of the Internal Improvement Fund is *prima facie* evidence of title in the grantee, but such title may be overcome by a superior title.

5.  In a suit to remove cloud from title, the mere production of a deed from the Trustees of the Internal Improvement Fund is not sufficient to warrant the cancellation of an opposing claim to title based on an equity under a statute granting the land to a railroad company, there being no evidence that the conveyance by the trustees was made pursuant to a prior equity.

Appealed from Circuit Court of DeSoto County; F. A. Whitney, Judge.

Decree reversed.

*Leitner & Leitner,* for Appellant;

*Treadwell & Treadwell,* for Appellee.

WHITFIELD, J.—Dunwoody brought suit for the cancellation of instruments as being a cloud upon his title to land. The court decreed a cancellation as prayed, and on appeal the defendant Mellie M. Morgan contends that there was error in rendering the final decree and in admitting evidence for the complainant.

The bill of complaint in effect alleges that the complainant is the owner in fee simple of the South Half of the southwest quarter of Section 13 T. 38 R. 24, De-Soto County, Florida, deraigning title thereto through various mesne grantors from the United States Government; that the land is wild, unoccupied and unimproved; that the defendant, Mellie M. Morgan, claims some interest in the land by reason of stated conveyances, the first of them being from the Florida Southern Railway Company; that defendant and those under whom she claims had and have no title legal or equitable to the lands, but the defendant asserts title under conveyances that are of record, thereby clouding complainant's title to and depreciating the value of the land. The prayer is that the title be decreed to be in complainant, and that the cloud be removed by appropriate cancellations of record. By a sworn answer, the oath not being waived, Mellie M. Morgan "denies that complainant is the owner of the land," "denies that the lands are wild and unseated, but says that she is the owner of the said lands, and the same have been in the actual custody of her and her grantors for more than seven years next before the bringing of this bill;" defendant admits that she derived her title to the lands as alleged in the bill of complaint, "but says all of said deeds are good and valid, and the source of her title is predicated upon a good and valid grant by the State of Florida;" that the lands were

granted to the State of Florida by An Act of Congress of September 28, 1850, and that pursuant to said Act, patents were issued to the State on February 14, 1880; that the State by An Act of the Legislature, Chapter 3167 Laws of Florida, approved March 4, 1879, granted said lands under certain conditions to the Gainesville, Ocala & Charlotte Harbor Railroad Company, which company afterwards changed its name to The Florida Southern Railroad Company, the terms and conditions of said grant being stated as contained in the Act hereinafter quoted; that upon information and belief defendant avers that pursuant to said Act the railroad company "did proceed with due diligence to survey its lines and did within the time required by said act complete said route and survey," and filed a copy of same with the Trustees of the Internal Improvement Fund, as directed; that said railroad company, in pursuance to the terms and conditions of its said charter and land grants, proceed with due diligence and in accordance with the charter and said land grant, and within the time therein specified, build and construct its said line of road over and within the said six mile limit of said land. The defendant further avers that the land is within the six mile limit of said ralroad; "that the land was earned by the said railroad, and the land was withdrawn from sale and held in trust for the use and benefit of the said railroad company; that at the time of the completion of the said road the land was withdrawn from sale and held in trust by the Trustees aforesaid for the said railroad company, and that there were no prior equities or rights existing at the time against the land;" that defendant "and her grantors have been upon said lands cutting ties, saw timber, digging gravel and otherwise using the said land

—this being the manner in which the said land could then be used most beneficial to the defendant and her grantors—for the last seven years or more." A replication was filed and testimony taken. An appeal was taken from a decree for the complainant as prayed.

By Act of Congress approved September 4, 1841, the United States granted to certain States five hundred thousand acres of land "for purposes of internal improvement," and upon its admission into the Union, by the Act of March 3, 1845, the State of Florida became entitled to the same acreage "for purposes of internal improvement."

An Act of Congress approved September 28, 1850, provides "That to enable the State of Arkansas to construct the necessary levees and drains to reclaim the swamp and overflowed lands therein, the whole of those swamp and overflowed lands, made unfit thereby for cultivation, which remain unsold at the passage of this Act, shall be, and the same are hereby, granted to said State." The Act of Congress further provides for the issue of a patent to the State for the granted lands, "and on that patent the fee simple to said lands shall vest in the said State of Arkansas, subject to the disposal of the legislature thereof; Provided, however, That the proceeds of said lands, whether from sale or by direct appropriation in kind, shall be applied exclusively, as far as necessary, to the purpose of reclaiming said lands by means of the levees and drains aforesaid." Section 4 of the Act enacts "That the provisions of this act be extended to, and their benefits be conferred upon, each of the other States of the Union in which such swamp and overflowed lands, known and designated as aforesaid, may be situated."

Chapter 610, Laws of Florida, entitled "An Act to

Provide for and Encourage a Liberal System of Internal Improvements in this State," approved January 6, 1855, set apart so much of the 500,000 acres of land as remained unsold, granted to each of certain States "for purposes of Internal Improvement," to which grant the State of Florida became entitled upon being admitted into the Union by Act of March 3rd, 1845, and also set apart therewith all the swamp and overflowed lands granted to the State by the Act of Congress approved September 28, 1850, as a distinct and separate fund to be called the "internal improvement fund" of the State of Florida "to be strictly applied according to the provisions of this act;" and "for the purpose of assuring a proper application of said fund for the purposes herein declared, said lands and all the funds arising from the sale thereof, after paying the necessary expenses of selection, management and sale," were "irrevocably vested" in five State officers and their successors in office, as trustees, "to hold the same in trust for the uses and purposes" therein stated "with the power to sell and transfer said lands to the purchasers." One of the "uses and purposes" stated in Chapter 610 to which the said fund was "to be strictly applied according to the provisions of the act" was "to pay out of said fund agreeably to the provisions of this Act, the interest, from time to time, as it may become due on the bonds to be issued by the different railroad companies under the authority of this act." The railroad companies coming within the provisions of the act were authorized to issue interest-bearing coupon bonds for construction and equipment at the rate of ten thousand dollars a mile, to run not more than thirty-five (35) years bearing interest at not more than seven per cent. per annum. The character of the railroads required to

be constructed to have the benefit of the Act, is specifically stated therein. See Hawkins v. Trustees of Internal Imp. Fund, 34 Fla. 405, 16 South. Rep. 311; Wilson v. Mitchell, 43 Fla. 107, 30 South. Rep. 703.

Another trust stated in the Act was "that the Trustees of the Internal Improvement Fund   *  *   shall make such arrangements for the drainage of the swamp and overflowed lands, as in their judgment may be most advantageous to the Internal Improvement Fund and the settlement and cultivation of the land." Sec. 621, Gen. Stats. See Trustee Internal Improvement Fund v. Root, 63 Fla. 666, 58 South. Rep. 371; Trustees Internal Imp. Fund v. Gleason, 15 Fla. 384. By Section 29 of Chapter 610, now Section 621 General Statutes of 1906, the alternative sections of the swamp and overflowed lands for six miles on each side may be granted by the legislature to such railroad companies as may be deemed proper. Trustees Internal Imp. Fund v. St. Johns Railway Co., 16 Fla. 531; Yager v. McNeill, 60 Fla. 400, 53 South. Rep. 12.

By Chapter 3167 Laws of Florida, approved March 4, 1879, the State granted to the railroad company "the alternate sections of the lands granted to the State of Florida by the United States under Act of Congress of September 28th, 1850, lying on each side and within six miles of a line of railroad to be constructed by said company"   *  *  *   " *Provided, however,* the said company shall comply with the provisions of the act entitled 'An Act to provide for and encourage a liberal system of internal improvements in this State,' approved January 6th, 1855, and the amendments thereto, as to the manner of constructing the roads and drainage." The act further provides: Sec. 3. "That upon the completion

of the grading and laying on the crossties of ten miles of said road, its branches or extensions, the title to the said alternate sections opposite said ten miles of raod so graded and furnished with crossties shall vest in said company, and a deed therefor shall be issued by the Trustees of the Internal Improvement Fund to the said company; *Provided, however,* That for every forty miles of road so graded and furnished with crossties ten miles shall be completed, ironed and equipped and in operation."

Sec. 4. "That upon the filing with the Board of Trustees by said company of the survey of the route which may be selected by said company, or any twenty miles thereof, the Trustees shall withdraw at the election of said company or its president the odd or even-numbered sections within such limits along or opposite the route or section thereof of twenty miles so surveyed from sale: *Provided, however,* That the same shall be restored to sale by the Board if the survey of the entire route is not filed within twelve months from the passage of this Act."

Sec. 6. "That no rights shall vest under this act unless the construction of said railroad shall be commenced within two years and be continued and carried on with reasonable progress, and no benefit shall be claimed for or on account of any part of the road constructed after seven years from the passage of this act," *   *   *.

Chapters 610 and 3167 are not inconsistent or repugnant. The latter refers to the former, and the two should be considered together in giving to each its proper operation and effect.

In proceedings to remove a cloud upon title to real estate, the complainant must show with clearness, accurary and certainty the validity of his own title, and the

invalidity of the title of the opposite party. Hill v. DeCosta, 65 Fla. 371, 61 South. Rep. 750; Jarrell v. Mc-Rainey, 65 Fla. 141, 61 South. Rep. 240; Houston v. Mc-Kinney, 54 Fla. 600, 45 South. Rep. 480. In suits to cancel or annul the title to real estate claimed to be a cloud upon the title of the complainant, the latter to succeed must do so on the strength of his own title, and not on the weakness of the opposing title. Equity will not aid in such cases where the complainant's title is doubtful. Levy v. Ladd, 35 Fla. 391, 17 South. Rep. 635; Sanford v. Cloud, 17 Fla. 557. Where the complainant's title is a legal one, he must be in possession in order to maintain a suit in equity to remove a cloud from such title, unless the land is wild, unimproved and so unoccupied as not to destroy the constructive possession that follows the legal title. Clem v. Messerole, 44 Fla. 191, 32 South. Rep. 783; Levy v. Ladd, 35 Fla. 391, 17 South. Rep. 635; Graham v. Florida Land & Mortg. Co., 33 Fla. 356, 14 South. Rep. 796.

A deed of conveyance from the Trustees of the Internal Improvement Fund is *prima facie* evidence of title in the grantee, but such title may be overcome by a superior title. Groover v. Coffee, 19 Fla. 61; East Coast Land Co. v. Ellis-Young Co., 55 Fla. 256, 45 South. Rep. 826.

In Yager v. McNeill, 60 Fla. 400, 53 South. Rep. 12, it was held that a deed from the Trustees of the Internal Improvement Fund conveying land that is included in the grant made by Section 1 of Chapter 3167 Acts of 1879, of alternate sections of land on each side of the railroad mentioned therein, which deed of conveyance is executed for proper purposes under the Act of 1855, after the survey of the route has been duly made and filed, but before the road opposite the deeded land has been

completed, carries title to the grantee in the deed as against the railroad company.

The complainant, over the objections made to the muniments of title offered, showed title to the land in controversy derived through a deed of conveyance from the Trustees of the Internal Improvement Fund dated July 30, 1885, which deed is therein expressly stated to be made under an Act entitled "An Act to Provide for and Encourage a Liberal System of Internal Improvements in this State," approved January 6th, 1855.

The defendant then put in evidence a certified copy of Chapter 3167 Acts of 1879, granting lands to the railroad company, a certified copy of a certificate made February 10, 1885, by the then Commissioner of Lands and Immigration, that the lands, among others, "have been withdrawn from sale and are held in reserve for the benefit of the Florida Southern Railway Company when earned by the construction of its road, in accordance with the terms of its charter and its land grants;" also conveyances covering the land from the Florida Southern Railway Company through mesne grantees to the defendant, and certificates as to the withdrawal of the lands from sale by the Trustees of the Internal Improvement Fund, as to the selection by the railroad company of the *odd numbered* alternate sections under its land grant, as to the patent of the land to the State, as to the existence of more than 500 acres of lands in DeSoto county not within the alternate sections granted to the railroad company which were held by the Trustees when the conveyance was made by them of the lands in controversy, and as to the change of the name of the railroad company, and as to the filing of a survey of the route for the railroad.

The defendant produced testimony to show that the lands in controversy are within six miles of the railroad; that one of the defendant's intermediate grantors received a quit claim deed to the lands on January 3rd, 1906, and had given premission for the digging of clay on the land to be used for the construction of a public road in the county, had excluded others from entering on the land, and had refused permission to applicants to cut timber from the lands and had paid "some taxes on it for a few years." There was also testimony to show that the railroad was completed opposite the lands between the latter part of the year 1885 and March 4th, 1886, and that the land is wild, unoccupied and unimproved.

The averment of the defendant's sworn answer that the lands "have been in the actual possession of her and her grantors for more than seven years next before the bringing of this bill," April 30th, 1911, is overcome by the evidence.

From the foregoing, it appears that the allegations of the complainant that he is the owner in fee simple of the land; that he deraigns "title thereto through various mesne grantors from the United States Government," and that the defendant claims through a conveyance from the Florida Southern Railway Company, which had no title legal or equitable, and that defendant acquired no right either legal or equitable through such company, are met by a denial that complainant is the owner of the land, and by averments to show an equitable right in the Florida Southern Railway Company in the particular land through a legislative land grant and the operations of the railroad company thereunder, with an averment "that there were no prior equities or rights existing at

the time against the land." In this suit to cancel an opposing title the complainant is required to prove the validity of his title and also the invalidity of the defendant's asserted title. To meet this requirement the complainant has merely presented documents to show in himself a title through a conveyance purporting to be under the Act of 1855 from the trustees of the internal improvement fund to a purchaser, and produced testimony that the land is wild, unoccupied and unimproved.

While the deed of conveyance from the trustees of the internal improvement fund is prima facie evidence of title, it may be overcome. By showing the land grant and the proceeding thereunder as above set forth, the defendant has shown an equitable right with reference to the particular lands, and the complainant has not met this showing by producing any evidence whatever that the conveyance by the trustees under which he claims title, was in fact made for the purpose of paying the expenses of the administration of the trust fund of which the lands were a part, or for the purpose of other trusts stated in the Act of 1855, which may have been prior in right to the claims of the railroad company under its legislative land grant. While there is no averment or proof that the conveyance purporting to have been made by the trustees under the Act of 1855, was not in fact made for the purposes of that trust Act, and while there is a presumption in favor of a conveyance made by the trustees that is regular on its face, yet where an adversary claim of title is sought to be annulled, the burden is on the complainant to clearly establish the validity of his own title and to show the invalidity of the defendant's asserted title. The defendant having shown an equitable interest in the specific land in place

at a given date, under a legislative land grant of alternate sections within six miles of the railroad line, and having averred "that there were no prior equities or rights existing at the time against the land," which averment is put in issue by the replication, it was incumbent upon the complainant, in this proceeding for the removal of cloud from title, to show by evidence that his legal title is in fact supported by an equity under the trust act of 1855, by virtue of which act the conveyance was made by the trustees.

In Yager v. McNeill, 60 Fla. 400, 53 South. Rep. 12, it clearly appeared by admitted allegations that the conveyance by the trustees was made for the purpose of paying the expenses of administering the fund of which the land in controversy was a part under the act of 1855, and the court held that "the railroad company under the grant of the alternate sections had no prior right at least before the completion of ten miles of the road as required by law opposite the particular lands." In this case there is no proof or admission that the conveyance made by the trustees of the internal improvement fund under which the complainant asserts title was in fact made for the purposes of the trusts under the Act of 1855, and the answer in effect avers that the complainant has no equities or rights in the land that are prior to the equity shown by the defendant.

The complainant has not produced the proofs required of him to support a decree cancelling and annulling an opposing title.

A duly certified copy of a deed of conveyance duly made and as recorded in DeSoto County from a transcript of the record of the original deed in Manatee county, from a portion of which county DeSoto county was

formed, is admissible in evidence under the law as affecting title to lands in DeSoto County. See Sec. 7, Chapter 3770 Acts of 1887.

As the answer merely "denies that complainant is th.; owner of the land," it is not necessary to discuss the questions of the admissibility of evidence affecting intermediate links of complainant's title since such questions do not show fatal defects, if the source of complainant's title is shown to be superior to that of the defendant.

Where the testimony submitted to a chancellor is not sufficient on some point to authorize a just decree in the cause, and it clearly appears from the record that testimony does exist on such point sufficient to enable the court to make a just decree, the cause will be remanded with directions to take further testimony on such point. Graham v. Florida Land & Mortg. Co., 33 Fla. 356, 14 South. Rep. 796; Fuller v. Fuller, 23 Fla. 236, 2 South. Rep. 426.

The decree is reversed at the cost of the appellee, and the cause is remanded for further proceedings, with leave to the complainant to show if he can by proper evidence that the conveyance by the trustees of the internal improvement fund through which the complainant asserts title, was in fact made to pay the expense of administering the land trust fund or for the trust purposes of the Act of 1855 under which the conveyance purports to have been made.

Ordered accordingly.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND HOCKER, J. J., concur.