**TRUSTEES OF INTERNAL IMPROVEMENT FUND OF FLORIDA, for Use and Benefit of UNITED STATES, v. STARK et al.**

**No. 351—Civ.**

District Court, S. D. Florida, Jacksonville Division.

Dec. 12, 1938.

Herbert S. Phillips, U. S. Dist. Atty., of Tampa, Fla., and William A. Paisley, Asst. U. S. Dist. Atty., of Jacksonville, Fla., for plaintiffs.

P. H. Odom, of Jacksonville, Fla., for defendants.

STRUM, District Judge.

In an action in ejectment, the plaintiff Trustees of the Internal Improvement Fund of the State of Florida, for the use and benefit of the United States, seek to recover a small strip of land near the mouth of the St. Johns River, Florida, now occupied by the defendants Stark, through their tenants the MacDowells.

The land in question is a narrow bank running in an easterly and westerly direction, approximately parallel to the shore line of the upland owned by defendants Stark, and separated therefrom by navigable water of varying depths up to 31.3 feet at low water, the mean depth in front of defendants' upland being 8.5 feet. This bank is connected to the mainland at the westerly end by a narrow neck, so as to make the bank a narrow peninsula, not an island. The peninsula is bounded on the north by the channel of the St. Johns River, and on the south by a small body of water called Ribault Bay. Defendants' upland is to the south of the Bay, the peninsula in question to the north. At the westward end of defendants' upland property, the distance from the upland shore line across Ribault Bay to the south or nearest side of the peninsula is 1250 feet, and at the eastward end 2500 feet. The average distance is 1600 feet. The Starks have never bulkheaded or filled in from their property on the mainland, so as to give them any rights under Chapter 8537, Acts of 1921, Sec. 1774, C.G.L.Fla.1927, known as the Riparian Rights Act of 1921, and there has never existed any physical connection between the mainland property owned by the Starks and the small peninsula opposite their property. The peninsula joins the mainland to the west of defendants' upland property and connects with upland property owned by others than defendants, but a portion of the peninsula runs approximately parallel to and opposite defendants' upland, separated therefrom by Ribault Bay. If the easterly and westerly boundary lines of defendants' upland are projected northerly at right angles to the shore, across and beyond the intervening water of Ribault Bay, they would pass transversely across the small peninsula lying to the north of the Bay and thus inclose a portion thereof. It is this portion which the defendants claim.

The land in question is "made" land. It was formed by dredging the channel of the St. Johns River to improve navigation near that point and depositing the "spoil" material in the shallow portion of the river, thus raising the natural bottom several feet above high water and forming what is known as Ward's Bank Training Wall for the protection of the dredged channel. The dredging was done by the United States, and the "made" land was in existence at the time of the conveyance from the Trustees of the Internal Improvement Fund hereinafter mentioned. Prior to this conveyance, however, the defendants had gone into possession of the parcel in dispute, so that it was necessary to bring this action in the name of the grantor Trustees for the benefit of the grantee United States. Before the dredged material was deposited, the depth of water over the natural bottom at the point in question was 6 to 12 feet.

Defendants have no conventional or record title to the peninsula or bank, either before or after the dredging. They claim solely as owners, with riparian rights, of the neighboring upland fronting on and to the south of Ribault Bay. They rely wholly upon the doctrine of riparian rights to sustain their title and occupancy. That this gives them no title is settled by the Supreme Court of Florida in Brickell v. Trammel, 77 Fla. 544, 82 So. 221. Defendants' possession is therefore that of mere squatters.

But have the plaintiffs a title upon the strength of which they can oust the de-

fendants from their possession for the benefit of the United States, for in ejectment the plaintiff must recover upon the strength of his own title, not upon the weakness of his adversary's.

By fee simple deed, dated September 15, 1935, the Trustees of the Internal Improvement Fund of Florida conveyed said lands to the United States outright, with a mineral reservation not material here. Prior to this conveyance the Trustees claimed title by virtue of Sec. 1391, C.G.L. Fla.1927, Chap. 7304, Acts of 1917. If the Trustees acquired good title under that section, plaintiffs are entitled to recover. Defendants assert that said Act of 1917 created no title in the Trustees because the depth of water over the original bottom at this point, before the dredged material was deposited thereon, was more than 3 feet at high tide, so that these lands were excluded from operation of the statute.

Sec. 1391, supra, vests in the Trustees of the Internal Improvement Fund, with power of disposition, three classes of coastal lands: (1) All islands, sand bars, shallow banks, or small islands made by the process of dredging the channel by the United States Government, located in the tidal waters of Florida; or (2) "similar, of[1] other" islands, sand bars and shallow banks upon which the water is not more than 3 feet deep at high tide and which are separated from the shore by a channel or channels not less than 5 feet deep at high tide; or (3) sand bars and shallow banks along the shores of the mainland title to which was not then vested in prior parties. The depth requirement applies only to the second class of lands, not to the first and third. The lands in question clearly fall within the first class, unaffected by the depth requirement, from which it follows that title thereto was vested in the Trustees, and passed to the United States by said deed, notwithstanding the depth of water over the original river bottom at said point before the dredged material was deposited thereon was more than 3 feet. A sand bar or a shallow bank is still a sand bar or shallow bank even though it may touch the mainland at one of its extremities. As stated, the peninsula-shaped sand bank or bar does not touch the defendants' upland, but is separated therefrom by several hundred feet of navigable water.

In Florida, these Trustee's deeds are prima facie evidence of title in the grantee. Morgan v. Dunwoody, 66 Fla. 522, 63 So. 905. The Trustees acquired title by the statute, and no title is shown in the defendants which would overcome the title established by plaintiffs.

Even if the lands in question, by reason of the depth over the original bottom, were sovereignty lands and not Internal Improvement Fund lands, the Trustees would still be able to maintain this action, as against these defendants under Chap. 15642, Acts of 1931, Ex.Sess., Sec. 1446 (13), C.G.L.Perm.Supp., and would be entitled to prevail therein.

Judgment for plaintiffs.

---

[1] So in original enrolled Act. Should read "similar or other."