JOHN F. DAYTON, *Appellant*, v. J. W. PATTON, *Appellee*.

Opinion Filed November 30, 1920.

1. In a suit in equity to remove an alleged cloud from and quiet title to certain land where both complainant and defendant claim title to the land in controversy from a common source, it is not incumbent upon complainant to trace his title further than to such common source of title.

2. In proceedings to remove a cloud from and quiet title to certain land the complainant must show with clearness, accuracy and certainty the validity of his own title and the invalidity of the title of the opposing party.

3. Where there is such an insufficiency of testimony as to preclude making a just decree, and the points are covered by the pleadings, and are such that there can be no doubt that testimony exists as to them, the cause will be remanded with directions to take further testimony on such points.

An Appeal from the Circuit Court for Alachua County; J. T. Wills, Judge.

Reversed.

*Hampton & Hampton*, for Appellant;

*Thomas W. Fielding* and *W. S. Broome*, for Appellee.

WEST, J.—This is a suit in equity to remove an alleged cloud from and quiet the title to certain land situate in Alachua County described in the bill. By an amended bill it is alleged that complainant is the owner and in the actual possession of the land described; that his possession consists of his residence upon and cultivation of such land.

The alleged cloud upon complainant's title, according to the allegations of the bill, consists of a sheriff's deed to defendant issued upon a sale of the land described as the property of a predecessor in title of complainant under an execution issued upon a judgment against such owner.

The answer in terms denies the allegations of each paragraph of the bill seriatim and demands strict proof thereof.

Evidence was taken before an examiner duly appointed for that purpose and upon a hearing thereon final decree was entered adjudging the equities to be with the defendant and dismissing the bill. Complainant thereupon employed other counsel who filed a petition for rehearing. Rehearing was denied and an appeal to this court was entered from the final decree and from the order denying the petition for rehearing.

The alleged cloud upon complainant's title which he seeks by this proceeding to have removed is described i- the ninth paragraph of the bill. This paragraph is as follows: "That on January 11th, A. D. 1916, there was execution issued on the said judgment against the said Robert L. Steele, Jr., and on the seventh day of February, A. D. 1916, there was what purports to be a sale of the said lands as described in Paragraph One of this bill, and as set out in the writ of attachment, by P. G. Ramsey, as sheriff of Alachua County, Florida, at public outcry at the court house in said county, and that the said 160 acres of land was purported to be sold to J. W. Patton, defendant herein, for the small sum of $10.00 and that a sheriff's deed was executed therefor by the said P. G. Ramsey, as sheriff, to the said J. W. Patton on the 23rd day of February, A. D. 1916, and filed for record on the tenth day of February, A. D. 1917, all of which appears on the public

records of the office of the Clerk of the Circuit Court of Alachua County, Florida, in deed book 99, on page 612; but the said J. W. Patton, defendant herein, or any one for him, has foreborne to sue complainant, or his grantors, the said S. P. Thompson and Jay P. Thompson, or otherwise bring any suit to test the sufficiency of his sheriff's deed, nor to eject this complainant, or his grantors, from said lands, although this complainant and his grantors have been in actual possession of said lands ever since and long before the execution of the said sheriff's deed and was in possession of said lands at the time of the filing of the writ of attachment against said lands and at the time of the sale and execution of said deed."

By appropriate allegations complainant deraigns title to the land by several mesne conveyances from Steele, the judgment debtor named in the quoted paragraph of the bill, to himself, and the allegations of the bill of conveyances from Steele to complainant were proved. Since Steele was the judgment debtor in the judgment upon which the land was sold to defendant, his (defendant's) claim of title to the land may be said to have originated in Steele, hence Steele became, as to the parties to this suit, a common source of title. Doyle v. Wade *et al.,* 23 Fla. 90, 1 South. Rep. 516. In this situation the defendant will not be heard to deny the validity of Steele's title, and it was not incumbent upon complainant to trace his title further back than this common source. Rhodus & Fleming v. Heffernan *et al.,* 47 Fla. 206, 36 South. Rep. 572; Mansfield & Bishop v. Johnson 51 Fla. 239, 40 South. Rep. 196. With proof of possession by complainant, which was also made, the validity of his title was prima facie established.

But in this class of cases the complainant's right to

recover depends not only upon proof of a valid title in complainant to the land involved, but also upon the invalidity of defendant's title. Levy v. Ladd, 35 Fla. 391, 17 South. Rep. 635; Houston v. McKinney, 54 Fla. 600, 45 South. Rep. 480; Jarrell v. McRainey, 65 Fla. 141, 61 South. Rep. 240; Hill v. DaCosta, 65 Fla. 371, 61 South. Rep. 750. Therefore, the final decree in favor of defendant must have been predicated upon the absence of proof of facts showing the invalidity of defendant's claim of title.

From the allegations of the bill it appears that Steele, who as we have seen, is a common source of title, conveyed the land involved to S. P. Thompson and J. P. Thompson on December 1, 1914, and while this deed of conveyance was not recorded until March 27, 1915, it is alleged and proved that the grantees went into actual possession of "all of the said lands" on December 8, 1914, "living on and cultivating said land," under the deed from Steele, and continued such possession until March 16, 1917, when it was sold and conveyed by them to the complainant, who on the day of the conveyance to him went into actual possession of "all of the said lands" and has ever since "lived on and cultivated same" under said deed. It also appears from the allegations of the bill that the judgment against Steele, upon which the execution issued which was levied upon the land by the sheriff and the land sold to defendant, was "filed" in the office of the clerk of the circuit court on May 4, 1915; but it is also alleged that there was on February 8, 1915, "attempted to be filed" in the office of the clerk of the circuit court a writ of attachment embracing the land described in the bill, said "attempted writ of attachment" being recorded in Lien Book Number 4 on page 8 of the public records of the county, and that on February 23,

1915, there was "filed" in the said office "what is purported to be a second, or amended writ of attachment, embracing the same lands."

Assuming that these statements with respect to the "filing" of the writs of attachment are equivalent to an allegation that such writs were levied upon the land described upon the date or dates stated, still the conveyance by Steele, the judgment debtor, to the Thompsons, complainant's predecessors in title, ante-dates such attachments, and Steele therefore had no title to the land when it was levied upon as his property. Neither was he in possession of the land, the allegation of possession by the Thompsons at that time being amply supported by the evidence. This being true, the sale and conveyance of the land by the sheriff to the defendant under the execution issued upon such judgment was prima facie ineffectual to convey any title to him.

There was, however, a failure upon the part of complainant to offer in evidence proof which apparently was available to show the invalidity of defendant's title. The sheriff testified as a witness for complainant that he did make sale of the property under this execution, but since neither writ of attachment with the return of the sheriff thereon showing the date of its levy, nor any subsequent proceedings in the suit, nor the deed sought to be cancelled as a cloud upon complainant's title was offered in evidence, the proof on this branch of the case was insufficient. But as it appears from the allegations of the bill that the facts tending to impeach the validity of defendant's title are matters of record, it would have been proper, when the case came on for final hearing, for the chancellor to refer it back to the examiner with di-

rections that testimony be taken upon that point before finally passing upon the case.

In several instances in which similar situations were presented, in order that substantial justice might be done, this court has reversed decrees and remanded cases for the taking of further testimony. In Fuller v. Fuller, 23 Fla. 236, 2 South. Rep. 426, speaking through Mr. Justice RANEY, the court said: "Where there is such an insufficiency of testimony as to preclude making a just decree, and the points are covered by the pleadings, and are such that there can be no doubt that testimony exists as to them, the cause will be remanded with directions to take further testimony on such points." See also Graham v. Fla. Land & Mortgage Co., 33 Fla. 356, 14 South. Rep. 796; Morgan v. Dunwoody, 66 Fla. 522, 63 South. Rep. 905.

The decree is reversed and the cause remanded for further proceedings not inconsistent with the views expressed in this opinion.

Reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.