JENNIE FLEISCHER AND M. FLEISCHER, HER HUSBAND, *Appellants,* v. VIRGINIA CAROLINA CHEMICAL COMPANY, A CORPORATION, *Appellee.*

Opinion Filed June 28, 1921.

1.  Certificates of analyses of samples of fertilizer analyzed by the State Chemist, which are verified by the affidavit of the State Chemist as true and correct under the provisions of

Section 1271, General Statutes, 1906, made for a citizen of this state of fertilizer purchased by him from any manufacturer or vendor in this state for his own use, are competent evidence in any court of law or equity in this state.

2. Sections 1271 and 1272, General Statutes, 1906, do not appear, from the facts presented, to deprive the defendant corporation of property without due process of law nor to deny to it the equal protection of the law.

3. Where there is such an insufficiency of evidence as to leave a material point in controversy uncertain and such a point is covered by the pleadings and it affirmatively appears that the additional evidence is available and justice seems to require a more complete development of the rights of the parties under the law, the cause may be remanded with direction to take further evidence on such point.

An Appeal from the Circuit Court for Seminole County; James W. Perkins, Judge.

Reversed.

*Massey* and *Warlow* for Appellants;

No appearance for Appellee.

V. S. Starbuck as *Amicus Curae.*

WEST, J.—This is a suit brought to subject certain lots of land of the defendant Jennie Fleischer, a married woman, to the payment of a debt alleged to be due by her to complainant for fertilizer sold and delivered by it to said defendant married woman and used by her in farming, cultivating and improving said land. The defense to the suit which raises the question presented by this appeal is contained in the folowing paragraph of the answer:

"And these defendants say that the item of $1,006.00 charged under date of November 6, 1917, in the statement annexed to the bill included a charge of $663.00 for 13 tons of mixed fertilizer, and that the item of $1500:00 under date of December 1, 1917, in the said statement, was for thirty tons of mixed fertilizer. That immediately after the receipt of each purchase they submitted fair samples of each of said lots of fertilizer to the Commissioner of Agriculture for analysis. That each of the samples selected and submitted was selected in the presence of two disinterested persons and was taken, bottled, corked and sealed in their presence, and each of said samples was placed in the hands of a disinterested person who forwarded each of them to the Commissioner of Agriculture at the expense of the defendant Jennie Fleischer. And the Commissioner of Agriculture did require the State Chemist to analyze the said sample packages, who certified his analysis of the same according to law, and the defendants found from analysis and aver that each of the said lots of fertilizer was deficient in several of the constituent elements shown by the labels attached to the said fertilizer wherefore these defendants say that the defendant Jennie Fleischer has been defrauded by the complainant by reason of the said deficiencies of constituent elements, and that the complainant is indebted to her in double the amount demanded of her by the complainant on account of said two lots of fertilizer namely in the sum of $4326.00 with interest thereon at the rate of eight per cent per annum from December 1, 1917, and that there is a balance due from the complainant to the defendant Jennie Fleischer, and these defendants aver that they are citizens of this State and pray that an account may be stated by or under the direction of this Honorable Court, between the complainant and the defendant Jennie Fleischer, and that the complainant may

be decreed to pay her such balance as may be shown to be due her from the complainant by the said account.''

Testimony was taken and upon a final hearing the Court sustained objections of complainant to certain documentary evidence offered by defendants and entered a final decree for complainant. From the final decree this appeal was entered and this ruling and the entry of a final decree for complainant are assigned as error.

The documentary evidence, objections to the introduction of which were sustained, is certificates of analysis by the State Chemist of the fertilizer sold by complainant to defendants. It is recited in the final decree that this ruling substantially disposed of the case and no further rulings on the evidence were made. In the brief of counsel for appellants, defendants below, it is asserted that the controlling question in the case is the ruling of the Circuit Court in excluding the certificates of analyses by the State Chemist. It is also stated that the ground of objections to their introduction upon which the Court based its ruling excluding them was that the certificates did not show that the analyses were made by the State Chemist in person.

The contention of the defendants was that the analyses of the State Chemist showed certain quantities of the fertilizer, for the value of which complainant sought recovery, deficient in certain constituent elements and that defendants therefore, upon proof of the fact of such deficiency in quality, were entitled to recovery from complainant a sum equal to twice the amount demanded therefor as allowed under the provisions of Section 2406, Revised General Statutes of Florida, 1920. Two certificates of analyses were offered. The verifications of these certificates are identical in form. One of the certificates is as follows:

"State of Florida, Agricultural Department,
Division of Chemistry, Fertilizer Section, Tallahassee,
February 11, 1918.
Analysis of Special Samples Under Articles 1271, General
Statutes of Florida,

Hon. W. A. McRae, Commissioner of Agriculture, Talla-
hassee, Florida.

Dear Sir: I submit the following analysis of Special Fer-
tilizer Sample No. 4412 Marked Mixed Fertilizer No. 5,
From C. M. Berry, of Sanford, Fla.
For M. Fleischer, of Sanford, Fla.,
Under date of Nov. 17, 1917, by mail to Com. of Agricul-
ture
Received Nov. 19, 1917, in sealed tin can

### Analysis.

| | | |
|---|---|---|
| Moisture | | 7.50% |
| Available Phosphoric Acid | | 6.75% |
| Insoluble Phosphoric Acid | | 0.55% |
| Ammonia ($NH_3$) | | 5.10% |
| Potash ($K_2O$) | 1.47% | Short 53% |
| Chlorine | | |

"Remarks.

Respectfully submitted,

R. E. ROSE, State Chemist,

"Tallahassee, Fla., May 13-1918.

"Personally appeared before me, the undersigned
authority, Frank T. Wilson, who, being sworn, says he is
Assistant State Chemist of Florida, Fertilizer Analyst,
duly qualified and commissioned as such; that he person-

ally analyzed the samples referred to on the reverse hereof, and that the results of the analysis are correctly stated.

FRANK T. WILSON,

Assistant State Chemist.

Sworn to and subscribed before me this 13 day of May, 1918.

"LAURA SMITH, Notary Public

"My commission expires Nov. 25, 1920

" (Notary Seal)

"Personally appeared before me, the undersigned authority, R. E. Rose, who having been sworn, says that he is the State Chemist of Florida, duly qualified and commissioned as such, that the foregoing record of Sample No. —— and the analysis of the same as herein, is true and correct.

"R. E. ROSE, State Chemist

Sworn to and subscribed before me, this 13 day of May 1918

"LAURA SMITH, Notary Public,

"My commission expires Nov. 25, 1920

" (Notary Seal)"

In Kimbro v. Bradshaw, 68 Fla. 12, 65 South. Rep. 868, the Court held that it was not error to exclude certificates of analyses verified by the Assistant State Chemist because the statute (Sec. 1271, Gen. Stats. 1906) making such certificates competent evidence required them to be verified by the affidavit of the State Chemist, and it was probably upon the authority of that case that the certificates offered in this case were excluded. The certificates under consideration were made before Chapter 7939, Acts of 1919 (Section 2405 Revised General Statutes of Florida, 1920) authorizing such certificates to be verified by the officer making the analyses, was enacted.

It will be noted that the certificates or records of the analyses made in this case are verified by the affidavits of the State Chemist as the statute requires. Sec. 1271 Gen. Stats. 1906. It is true that such certificates or records are also verified by the affidavits of the Assistant State Chemist who affirms that he personally analyzed the samples received and that the results of the analyses are correctly stated, but the certificates or records of the analyses are "verified by the affidavit of the State Chemist" as "true and correct." Nothing more is necessary. That more is done than the statute requires in the way of verifications of the records or certificates will not render the records or certificates incompetent. It would be impracticable, and perhaps physically impossible, for the State Chemist to give his personal attention to every detail of every analysis which he is required by law to make. Recognizing this, the Legislature has appropriated from the State Treasury public funds for paying salaries of assistants to the State Chemist. Sec. 183, Revised General Statutes of Florida, 1920. Presumably the duties of the assistants to the State Chemist are performed under his direction and under this statute a certificate or record of analysis of fertilizer which is taken and delivered for analysis as the statute requires, which certificate or record is verified by the law or equity in this State. There was error therefore in excluding the certificates of analyses offered by defendants.

Other grounds of objection to the admissibility in evidence of the certificates of analyses are that the admission of the same in evidence would be a denial to the complainant of due process of law and the equal protection of the law.

The question of the constitutional validity of the statutes authorizing the reception in evidence of the certifi-

cates of analyses of the State Chemist has been previously considered by this Court and a conclusion reached contrary to that now urged by counsel. Adams v. American Agricultural Chemical Co., 78 Fla. 362, 82 South. Rep. 850. The question was thoroughly examined in the opinion filed in that case and if it may be regarded as presented here there is no occasion for a further consideration of it. We are not disposed to modify the views expressed in that opinion. It may be remarked, however, that in the opinion in that case it is stated ''that the statutes now under consideration were primarily designed to compensate the defrauded purchaser for the injury suffered;'' that the Legislature had in mind the protection of the user of the fertilizer and that because of the impracticability of determining with certainty the amount of damages sustained in such cases the statutes fix an amount as liquidated damages which may be awarded to the purchaser who has sustained injury because of the fraud of the manufacturer or vendor of the fertilizer from whom the purchaser acquired it, and it is strongly intimated in the opinion that the statutes should not be regarded as penal in their nature.

Another ground of objection to the admissibility of the certificates of analyses is that it was not shown that the samples analyzed were taken and sent in accordance with the statute. The evidence upon this point is not as clear as it might be. It does not clearly appear that the samples were not in fact taken as required by the statute and it does appear from the evidence that additional evidence exists upon this point which may be available upon a further hearing. In former cases, under similar circumstances and in order that substantial justice may be done, this Court has reversed decrees and remanded such cases for the taking of further testimony. Dayton v. Patton, 80 Fla.

763, 86 South. Rep. 702; Morgan v. Dunwoody, 66 Fla. 522, 63 South. Rep. 905; Graham v. Fla. Land & Mortgage Co., 33 Fla. 356, 14 South. Rep. 796; Fuller v. Fuller, 23 Fla. 236, 2 South. Rep. 426. Justice requires a more complete development of the rights of the parties under the law.

For the errors indicated the decree will be reversed for appropriate proceedings.

Reversed.

TAYLOR, WHITFIELD AND ELLIS, JJ., concur.

BROWNE, C. J., dissents.

BROWNE, C. J., Dissenting.—I think the ruling of the Circuit Judge in the matter of excluding the certificate of analysis was proper. It appears conclusively from the testimony that Mr. C. M. Berry was the "person selecting" the samples to be sent to the Commissionar of Agriculture for analysis.

The provision of the statute on this subject is, "But in order to protect the manufacturer or vendor from the submission of spurious samples, the *person selecting* the same shall do so in the presence of *two* or *more* disinterested persons"

Mr. Fleischer testifies that he was present when the samples were selected, and that the other persons were Mr. C. M. Berry, "and another man who was employed on the farm" whose name he did not remember. The defendant then offered in evidence the "Certificate from the Agricultural Department of the State of Florida, signed

and sworn by R. E. Rose, State Chemist, under date of February 11, 1918.'' This was objected to upon these grounds:

''First, that the same is incompetent.

''Second, *that it has not been shown that said sample was taken and sent in accordance with the statute.*

''Third, that the admission of the same in evidence would be a denial to the complainant of due process of law.

''Fourth, that the admission of the same in evidence would be a denial to the complainant of the equal protection of the laws.

''Fifth, that said certificate does not show that the analysis was made by the State Chemist.''

The ruling on this motion shown by the record, was ''Objection Sustained, Jas. W. Perkins, Judge.''

Mr. Berry, who was the County Agricultural Agent, testified that it was his custom to select samples for various people in the county. He selects ''from two to three hundred a year.'' He thus details his method of selecting the samples to be sent to the Commissioner of Agriculture: ''I take a sampling iron and go to his place and, before another witness, draw the sample in accordance with the rules and regulations set forth by the State. We take at random ten sacks of the shipment, whatever the shipment may be, and draw practically an equal quantity from each of the ten sacks. This is mixed in a receptacle and then a portion of it is placed, approximately a pound, from a pound to two pounds, in a tin container. On that tin container is a label sealing the package at the time, before the two witnesses, another witness and myself, and in that

manner the package is transmitted to the Commissioner of Agriculture for analysis.''

Under the statute there should have been two disinterested witnesses to the acts of Mr. Berry, who was ''the person selecting the samples,'' but no attempt was made to prove that his act was witnessed by two disinterested persons; and the testimony shows that it was not.

The County Agent's construction of the law is that the statute only requires *one* disinterested witness to his acts in selecting and mailing the samples, as provided by law, and this view seems to be accepted by the majority of the Court. By the same process of reasoning, if the statute had provided that the ''person selecting the samples'' should do so ''in the presence of *one* or more disinterested persons,'' there need not be any one present except the person selecting the samples, who would thus become a disinterested witness to his own act. I cannot accept that conclusion.

According to Mr. Fleischer's testimony, the only person who saw the samples selected was a man employed on the defendant's farm, and this circumstance tends to negative rather than establish his disinterestedness. Mr. Berry makes no attempt to show that the only person he remembers who witnessed his selection of the samples was disinterested. On this point he testifies as follows: Q. ''Do you remember who the other witness was at this drawing, if you have any recollection of the drawing at all? A. I couldn't state who the other witness was. On his can is his own signature though. Q. But you don't remember who he was? A. I don't remember who was at that particular drawing.'' Q. You have no recollection of who was present at the time the samples were drawn? A. I am of the

opinion that a man by the name of William Mickens was there, but there being so many samples and so many witnesses, it is impossible for me to be positive at this time. However, the label on the can would determine that; also, of course, it bears the signature of the witness.''

If Mickens is the same that Mr. Fleischer testified about as being present, he was one of Mr. Fleischer's employees and could hardly be classed as a disinterested person. But conceding that he was not, the testimony is conclusive that there was but *one* disinterested witness present when Berry selected the samples.

I think the testimony establishes conclusively that the selection of the samples that were sent to the Commissioner of Agriculture for analysis was not done according to law, and that the Court did not err in excluding the certificate upon the second ground of the objection, ''that it has not been shown that said sample was taken and sent in accordance with the statute.''

The statute under consideration is in the nature of a penal statute, in that it provides that a purchaser of fertilizer or fertilizing materials ''shall recover'' ''twice the amount paid to or demanded by the manufacturer or vendor for the fertilizer or fertilizing material so purchased.'' Brockenbrough v. Spindle, 17 Gratt. 21; Globe Pub. Co. v. State Bk. of Neb., 41 Neb. 175; 22 L. R. A. 854; Bay City & E. S. R. Co. v. Austin, 21 Mich. 390.

In Bay City & E. S. R. Co. v. Austin, *supra*, the Court held that a statute which authorizes a judgment to be entered for double the damages found by the jury, is in the nature of a penal statute.

''Statutes which impose penalties or forfeitures, or provide for a recovery of damages beyond just compensation

to the party injured, whether such penalties, forfeitures, or damages are to be recovered at the suit of the State or of a private individual, are to be strictly construed, in so far as they inflict punishment.'' C. C. C. & St. Louis Ry. Co. v. Wells, (65 Ohio State 313) 58 L. R. A. 651.

It is a well settled rule that statutes of this nature are subject to strict construction. ''More correctly it may be said that such laws are to be expounded strictly against an offender and liberally in his favor.'' 25 R. C. L. 1083; Hall v. N. & W. R. R. Co., W. Va. 41 L. R. A. 669; Jennings v. Commonwealth of Va., —— Va. ——, 163 S. E. Rep. 1080; 21 L. R. A. 265.

We have in this case applied the opposite rule, and the safeguard afforded by the Act, ''to protect the manufacturer or vendor from the submission of spurious samples'' is removed.