McCampbell Furniture Stores, Inc., v. Central
Farmers Trust Co., *et al.*

158 So. 283.
Opinion Filed July 31, 1934.
Petition for Rehearing Denied December 28, 1934.

*A. S. Bussey,* for Appellant;

*Winters, Foskett & Wilcox, Coleman & Cook* and *John R. Beacham,* for Appellees.

WHITFIELD, P. J.—On May 1, 1925, a mortgage trust deed was executed by Hibiscus Holding Company to First American Bank & Trust Company, as trustee, to secure a bond issue, the mortgage deed covering described real estate upon which apartment houses were being erected in Highlands Park Addition to West Palm Beach, Palm Beach County, Florida, "together with all the furniture, fixtures and furnishings which may be placed in the building or buildings situate thereon, whether such buildings now exist or are hereafter erected."

Foreclosure proceedings were begun September 13, 1928, by the Central Farmers Trust Company as successor trustee; and by amendment, Campbell Furniture Stores, Inc., was made a defendant in the foreclosure proceedings, April 21, 1932, with an allegation that such defendant claims some right in the "mortgaged premises," which, however, is subordinate to complainant's trust deed.

The bill of complaint alleges that "Palm Beach Securities Corporation is the present holder of the record fee simple title to the aforesaid real property under and by virtue of a warranty deed executed by Hibiscus Holding Company to the said Palm Beach Securities Corporation, dated July 14, 1926."

But the bill of complaint contains no allegation of ownership by the former or present mortgage trustee, of any furniture, fixtures or furnishings in any building on the mortgaged land at the execution of the mortgage deed or at any time thereafter.

By answer McCampbell Furniture Stores, Inc., admitted complainant's priority of lien on the real estate covered by the trust mortgage; and avers that Hibiscus Holding Com-

pany was never the owner of the title or of a mortgageable interest in the furniture, and that the trust deed never became a lien upon any furniture put in the said building, and that said defendant's "right, title and interest, in and to the furniture, fixtures and furnishings which were placed in the buildings upon said real estate, and all of which were placed therein long after the date, delivery and record of said trust deed, are prior, superior and ahead of any right, title, and interest of the plaintiff therein and thereto, * * *"

"This defendant says that its right, title, interest, equity and lien in the aforesaid furniture, fixtures and furnishings located in said Hibiscus Apartments, at 619 Hibiscus Street, in the city of West Palm Beach, Florida, and upon the aforesaid real estate, arises out of the fact that this defendant was the seller of said personal property, and there is an unpaid balance of the purchase money for the said identical personal property still owing to it, which said unpaid balance of purchase money is represented by * * * certain promissory notes; * * * that the maker of the aforesaid promissory notes was and is the Palm Beach Securities Corporation, which was and is the buyer of the aforesaid personal property of and from this defendant. That said personal property was placed by this defendant in said Hibiscus Apartments in the spring and summer of 1926, pursuant to an agreement relating to the sale thereof, under which, upon completion of the delivery thereof, cash was to be paid by the buyer therefor, and that the property therein should not vest in the buyer, but should remain in defendant until the cash was paid and received therefor. That the said buyer being unable to complete payment of the purchase money in cash, on or about August 7, 1926, when the sum of $20,832. 25 principal sum of balance was unpaid on said

purchase money, and when this defendant was demanding the cash therefor, and if not paid had the right to retake said personal property, thereupon requested this defendant to permit payment of said balance on terms of $1000.00 monthly commencing October 1, 1926, as to $21,000 of said balance, and upon payment of $1915.00 then to be paid in cash, the total amount of principal to be paid to be increased from the balance of the cash price of $20,832.25 by the amount of 10% thereof, so as to make a new balance of $22,915.48; and with the understanding between said parties that the property in said personalty should not vest until payment of said new balance then agreed upon in cash; and this proposition of said buyer was accepted by this defendant, and thereupon said Palm Beach Securities Corporation paid the cash sum of $1915.48, and executed its twenty-one notes, dated as of May 1st, 1926, for $1000.00 due consecutively beginning October 1, 1926. That finding itself unable to meet said payments in order, the terms of payment were afterwards readjusted on March 1st, 1927, by the taking of the renewal notes hereinabove described dated March 1st, 1927, and March 15, 1927, when it was further understood by and between said parties that the property in said personalty should not vest in said buyer, but should be and remain in this defendant until payment in cash of said notes:

"That on July 28th, 1928, said Palm Beach Securities Corporation made, executed and delivered to this defendant its chattel mortgage covering the aforesaid furniture, fixtures and furnishings located in said Hibiscus Apartments; which said mortgage was duly acknowledged by the officers of said Palm Beach Securities Corporation, and was on July 30, 1928, filed for record, and was duly recorded. * * *"

On testimony taken by a master, he reported in favor of complainant's claim of prior lien on the furniture. Excep-

tions to the master's report were overruled, and decree was rendered for the complainant from which defendant, Campbell Furniture Stores, Inc., alone appealed.

The question to be determined is whether the above quoted so called "after acquired property provision" in the mortgage deed is a prior first lien on furniture, fixtures and furnishings placed in the buildings between November, 1925, and May, 1926, by McCampbell Furniture Stores, Inc., a furniture dealer, under an agreement with officers of the mortgagor, Hibiscus Holding Company, to be hereinafter stated, which furniture was on May 1, 1926, sold by McCampbell Furniture Stores, Inc., to Palm Beach Securities Corporation, the successor in interest to the mortgagor, Hibiscus Holding Company. The latter company had failed to complete payments for the furniture, and, as is alleged, later conveyed its interest in the mortgaged "real property" to Palm Beach Securities Corporation. The immediate question is; whether title to the furniture here involved passed from the defendant, McCampbell Furniture Stores, Inc., so as to make the furniture primarily subject to the trust deed mortgage.

A part of the testimony for the McCampbell Furniture Stores, Inc., relative to the agreement to sell the furniture, is as follows:

"Q. What was the agreement?

"A. Well, my understanding was, or agreement as we talked along, that the title was to remain in us until it was paid for, until the furniture was paid for; they (the Securities Corporation) gave me these notes, they set out they would pay so much a month on certain terms.

"Q. You never had that agreement with the Hibiscus Holding Company?

"A. No, sir.

"Q. You were supposed to get cash for them?

"A. Never did have any agreement except they were to pay cash for them.

"Q. And the Hibiscus Holding Company entirely dropped out of the picture and turned their indebtedness over to the Securities Corporation?

"A. Yes, sir."

As to the sale of the furniture to the Palm Beach Securities Corporation, the same witness testified:

"Q. The chattel mortgage, concerning which you have testified wasn't delivered to the McCampbell Furniture Stores, Inc., in August, 1926, was it?

"A. No, sir.

"Q. At the time that you received the first set of notes?

"A. No, sir.

"Q. And as a matter of fact the chattel mortgage wasn't contemplated at that time by the Palm Beach Securities Corporation and McCampbell Furniture Stores, Inc., was it?

"A. Well, I don't know as we said anything about any chattel mortgage.

"Q. There was no discussion at that time, between July and August, 1926, about a chattel mortgage, was there?

"A. I don't remember anything about a chattel mortgage. We talked about a contract, about the stuff remaining standing for itself, leaving it in our name until it was paid for.

"Q. But you had already sold it to the Hibiscus Holding Company and Palm Beach Securities Corporation on open account, hadn't you?

"A. No, sir, not on open account. We had to keep a memorandum of it, but our terms was strictly cash, we never did make any open account proposition at all."

A representative of the Hibiscus Holding Company testified in part:

"It was my understanding that we were to pay cash for the furniture when we were buying it from the McCampbell people."

The evidence in its entirety shows that representatives of Hibiscus Holding Company, the mortgagor, after asking for and being denied credit in the purchase of furniture for the buildings, made an agreement with the President of McCampbell Furniture Stores, Inc., by which the purchaser was to select furniture by samples on hand and by catalogue, to be ordered from North Carolina and other manufacturing points, and placed in the buildings to be paid for in cash plus 20%, upon being checked up, approved and accepted; that the vendor was to retain title to the furniture until it was paid for; that there was delay in delivery, during which other furniture was temporarily loaned to the purchaser; that the furniture ordered was all delivered by May 11, 1926; that payments were made thereon but the purchaser did not check up and approve the furniture delivered. Pending efforts to collect the balance due, the purchaser was unable to pay and transferred its interest in the premises as mortgagor to the Palm Beach Securities Corporation, and the vendor of the furniture sold the furniture to the same assignee of the mortgagor, taking note and subsequently a purchase money chattel mortgage for the amount due on the furniture.

Under these circumstances the trustee mortgagee may foreclose the mortgage on the furniture, subject to the purchase money chattel mortgage of McCampbell Furniture Stores, Inc., for the balance of the purchase price of the furniture. The furniture sold to Hibiscus Holding Company was not in condition for delivery when the agreement for its sale was made, and title did not pass to Hibiscus

Holding Company, since the furniture, though put in the building, was not checked up, approved and paid for according to the purchase agreement. The title to the furniture in the building remained in McCampbell Furniture Stores, Inc., until it was sold by McCampbell Furniture Stores, Inc., to the Palm Beach Securities Corporation, the assignee of the mortgagor of the land and building containing the furniture. There was a sale of the furniture by McCampbell Furniture Stores, Inc., to the Palm Beach Securities Corporation, which passed the title and made the furniture amenable to the lien of the mortgage trust deed; but such lien is subject to the purchase money mortgage given to McCampbell Furniture Stores, Inc. Title to the furniture, subject to the purchase money chattel mortgage of its vendor, passed to the assignee of the mortgagor and became *cum onere* a part of the mortgaged property under the trust deed, subject to the purchase money chattel mortgage with which the title to the furniture was encumbered when it passed to the assignee of the mortgagor.

"The lien of the mortgage trust deed attaches to the title of after-acquired property in the condition in which the mortgagor takes it from his vendor, and subject to all known liens and equities valid against the vendor, and also subject to all liens or equities valid against the vendee and mortgagor which arise in the act of purchase or acquisition, and therefore necessarily qualify its scope and extent."

"An after-acquired property clause in a mortgage given by a corporation attaches to property to which the mortgagor subsequently acquires either the legal or equitable title, but subject to the limitation that the mortgagee is not a purchaser for value as to such property, and can take by way of lien no greater interest than that acquired by the mortgagor itself; and his lien is subject to all known liens or equities valid against the mortgagor, which arise in the

act of purchase or acquisition, and which qualify the scope and extent of its ownership." Harris v. Youngstown Bridge Co., *et al.*, 90 Fed. 322.

The controlling facts here are quite different from those in Wade v. C. S. & St. L. Ry., 149 U. S. 327, and Venus v. Farmers Loan & Trust Co., 90 Fed. 348.

The contention that even though the vendor of the furniture refused to sell it to Hibiscus Holding Company except for cash, yet the delivery of the furniture without collecting the cash price was a waiver of the condition for cash payment so that title passed to the vendee and became subject to the trust deed mortgage, is not tenable since the evidence does not show a waiver or a change to a sale on credit, but does show that the vendee did not check up, approve and accept the furniture and did not pay for it as agreed; therefore the title did not pass to Hibiscus Holding Company but remained in the vendor who afterwards did sell the furniture to the assignee of the trust deed mortgagor, taking notes therefor and subsequently a purchase money mortgage upon the furniture, which mortgage under the facts of the case must be considered as a part of the sale transaction, thereby making the title to the furniture pass to the vendee, Palm Beach Securities Corporation, subject to the purchase money mortgage given by the vendee to the vendor, McCampbell Furniture Stores, Inc., B. L. & R. Waterworks and Irrigation Co. v. Garland, 164 U. S. 1, 17 Sup. Ct. 7, 41 L. Ed. 327; Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339; New Orleans & Ohio R. R. Co. v. Mellen, 12 Wallace (U. S.) 362, 20 L. Ed. 434; Botsford v. New Haven, M. & W. R. R. Co., 41 Conn. 454.

Neither partial payments without full payment nor the failure of the Hibiscus Holding Company to check up and approve the furniture when delivered as agreed, passed title to the vendee, the vendee being in default and the

vendor not waiving any of the conditions of the sales agreement with Hibiscus Holding Company.

The terms of the trust deed mortgage, to which McCampbell Furniture Stores, Inc., was not a party, cannot operate to deprive the furniture company of its rights which it did not surrender or waive.

The record does not contain evidence of facts which in law would operate to pass title to the furniture to Hibiscus Holding Company. Nor does it appear that the Hibiscus Holding Company attempted to convey the furniture to its assignee if it could legally do so, or that McCampbell Furniture Stores, Inc., acquiesced in the defaults of the Hibiscus Holding Company so as to waive the agreement that title to the furniture should remain in McCampbell Furniture Stores, Inc., until the conditions of the sale for cash were complied with by the Hibiscus Holding Company.

The asserted duty of the mortgagor, Hibiscus Holding Company, under the trust deed mortgage to procure furniture for the building cannot operate to deprive McCampbell Furniture Stores, Inc., of any rights it retains in furniture it sells to the mortgagor in the absence of a relinquishment or waiver of such rights by the furniture company.

In view of the conditions and agreement under which the furniture was sold and delivered, the fact that the vendor kept a book account of the deliveries made from time to time as the furniture could be obtained under the conditions affecting the purchase, could not operate to pass title to the vendee in the absence of a change in the purchase agreement that would amount to a sale on credit or to an estoppel against the vendor.

The decision here reached is not a reversal of the finding of the Circuit Judge on the weight of conflicting testimony, but it is a holding that the legal effect of the evidence ad-

duced was misapprehended, in determining whether title passed to the vendee of the furniture so as to make it subject to the "after-acquired property" provision of the trust deed mortgage. Section 5778 (3871) C. G. L., is not applicable here.

Reversed.

BROWN and BUFORD, J. J., concur.

DAVIS, C. J., and ELLIS and TERRELL, J. J., concur in the opinion and judgment.

### ON REHEARING.

PER CURIAM.—On rehearing it is made to appear that there is record evidence available affecting the material issue of whether the title to the furniture had in law and in fact passed from the McCampbell Furniture Stores, Inc., to the Palm Beach Securities Corporation; and as on the record filed herein the evidence is not full enough to afford a complete understanding of the issues sought to be made, the decree is again reversed and the cause is remanded for further evidence to be taken in due course of proper procedure. Fuller v. Fuller, 23 Fla. 236, 2 So. 426; Morgan v. Dunwoody, 66 Fla. 552, 63 So. 905; Dayton v. Patton, 80 Fla. 763, 86 So. 702; Fleischer v. Va. Car. Chem. Co., 82 Fla. 50, 89 So. 401.

It is so ordered.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J. J., concurs.