GRIMES, Judge.
This is an appeal from a final judgment of mortgage foreclosure.
By, contract dated January 2, 1970, appellant, Alstan Bay Corp., agreed to purchase from appellee, Lee Kennedy, all of the outstanding stock of Baywood Furniture Mart, Inc. (hereafter called company). The contract noted that the purchase price of $153,000.00 was predicated upon a net worth of $110,129.00 as shown by the October 31, 1969, balance sheet of. the company and an additional sum of $42,871.00 representing an agreed upon appreciated value of the real estate over that reflected on the balance sheet. Of the total price, $42,871.-00 was to be paid in cash and the deferred balance was to be evidenced by a promissory note calling for ten equal annual principal payments plus quarterly payments of interest. The note was required to be endorsed by Alstan’s owner, the appellant, A. James Dickerson, Jr., and secured by a mortgage on the company’s real estate.
The contract further provided:
«2 * * *
(b) The purchase price aforementioned is based on the financial statement of Company dated October 31, 1969, and should there be any change in the aforesaid statement at the time of execution of this Agreement or should there be any change in the financial condition of Seller as shown by financial statements as of December 31, 1969, or due to inventories as hereinafter provided, or due to any other material changes in condition of Company, then the price and said promissory nóte shall be adjusted accordingly. In addition, in computing said purchase price all accounts receivable shall remain the responsibility of Seller as to their collecta-bility and Seller does hereby warrant said accounts receivable, it being provided that Purchaser shall collect said accounts receivable and at such time as Purchaser determines that any of said accounts receivable shall be uncollectable Purchaser shall assign back to Seller said accounts receivable and the aforementioned promissory note shall be adjusted accordingly.
(c) The closing on this transaction shall be as of January 1, 1970. The aforementioned promissory note shall be executed at that time. In the event adjustments shall be necessary as stated above and below Purchaser shall execute a new adjusted promissory note which shall be exchanged for the previous one so delivered.”
The purchaser conducted a physical inventory of the company and took possession early in 1970. Thereafter, there were several discussions between Kennedy and Dickerson concerning possible adjustments to the purchase price. For reasons not entirely clear, the stock certificates were not turned over to Dickerson until sometime in 1973. In the meantime, the purchaser refused to make any payments on the note.
At the conclusion of the hearing, the judge ordered the mortgage foreclosed but declined to accelerate the note because he felt it would be inequitable to do so when the seller had so long delayed the delivery of the stock of the company. A judgment was entered for the amount of principal and interest which had accrued upon the note to date (less a $7,400.04 credit for accounts receivable deemed uncollectible). Kennedy does not complain of the failure to accelerate the note.
*352 Appellants first contend that no judgment whatsoever should have been entered because of the failure of Kennedy to promptly turn over the stock certificates. While it is true that these certificates were evidence of the ownership of the company, it is also true that Dickerson and his corporation took over and maintained complete possession and control of the company following the purchase. Appellants were not hampered or prejudiced by reason of not having the certificates, and the court properly held that this could not exonerate them from their obligations under the note.
The credit against the judgment was for three accounts receivable which had been assigned in writing by appellants to Kennedy. The court declined to give a further credit of $8,825.03 for some additional accounts receivable which were said to be uncollectible but which appellants had refused to assign. Likewise, the court refused to give credit for expenses totall-ing $9,111.51 which were claimed by the appellants to have been incurred in 1969 but not reflected on the closing 1969 balance sheet, unless it could be shown in subsequent proceedings that any such payables did not come to appellants’ attention until after August 14, 1970. The basis upon which the court declined to give these credits was that Kennedy and Dickerson had signed a supplemental agreement on August 14, 1970, which purported to make certain adjustments called for under paragraph 2(b) of the original sales agreement. The supplemental agreement amended the purchase price to $154,064.20, and Alstan and Dickerson signed a new note for $111,193.20 in substitution for the old one. The court concluded that the parties had “struck a new balance” by their execution of the supplemental agreement and that the appellants’ complaints over receivables and payables were included, along with other matters, in the adjusted purchase price reflected therein. There being evidence in the record to support this conclusion, we cannot say that the court erred in so holding.
Appellants made an additional complaint of substantial magnitude. Just before the end of 1969 and unbeknownst to appellants, Kennedy directed his general manager to record as sales all of the future orders which the company held at that time. This represented a total departure from the accounting practice previously followed by the company. Kennedy said his action was prompted by a requirement of the Internal Revenue Service. The appellants submitted the testimony of a certified public accountant to the effect that he knew of no tax reason why such a practice would be required. In any event, appellants agreed to purchase the company in reliance upon a balance sheet dated October 31, 1969, and they had a right to assume that the. same accounting methods would be employed in preparing the financial statements necessary to reflect transactions occurring during the balance of the year.
The parties stipulated that by the end of 1969 future orders totalling $58,000.00 had been written up as sales. This had the effect of adding that amount of accounts receivable to the balance sheet dated December 31, 1969. Obviously, when these sales were finally closed, it would be necessary either to remove furniture from inventory or to acquire the furniture to be sold from a manufacturer. While the evidence is somewhat equivocal on the point, it tends toward the conclusion that the closing 1969 balance sheet contained neither an account payable nor a deduction from inventory relating to any of these future sales. If this be so, even though such sales were consummated after the appellants acquired the company, the total receipts for the sales would have already been incorporated into the 1969 balance sheet without any entries to reflect the cost of these sales. As a result, the net worth on the closing 1969 balance sheet would be overstated to the extent of the total receipts less the amount of *353 income taxes which would have been payable as a result of the overstated figure.
■ While Dickerson admitted that he became aware in March of 1970 that some future sales had been written up late in 1969, he said he had no idea of their magnitude. Moreover, it seems clear that the parties were not making any adjustments or attempting to settle any differences with respect to the future sales when they signed the supplemental agreement and Dickerson signed the new note. Therefore, we believe the court erred in failing to give the appellants appropriate credit for this unusual handling of future sales.
It has long been held that where “there is such an insufficiency of evidence as to leave a material point in controversy uncertain and such a point is covered by the pleadings and it affirmatively appears that additional evidence is available and justice seems to require a more complete development of the rights of the parties under the law, the cause may be remanded with directions to take further evidence on such point.” Wilkins v. Bank of Commerce, 1928, 95 Fla. 85, 116 So. 13; Fleischer v. Virginia Carolina-Chemical Co., 1921, 82 Fla. 50, 89 So. 401; Atlantic & Golf Properties, Inc. v. Palmer, Fla.App.3rd, 1959, 109 So.2d 768. Since the court denied appellants’ claim with respect to future orders on the premise that any differences had been resolved by the signing of the supplemental agreement and since it appears that additional and more specific evidence with respect to possible offsetting entries in the books for 1969 could be presented, we have determined to remand the case for further proceedings on this point.
This cause is, therefore, remanded for the purpose of receiving additional evidence in order to determine the extent, if any, the balance sheet of the company for December 31, 1969, included entries which would reflect the cost of those future sales which were incorporated into that balance sheet as $58,000.00 of accounts receivable. The court shall thereupon subtract the total of such entries from $58,000.00 so as to arrive at the amount by which the receivables were overstated. From that figure shall be subtracted the amount of income taxes which were paid by reason of the overstatement and the resulting difference shall constitute an additional credit against appellants’ debt. Since the sales agreement provided for the note to be refigured based upon any adjustments to the sales price, the principal amount of the note will then become that figure derived when the appropriate deduction for the handling of future sales, together with the $7,400.04 credit for uncollectible accounts receivable, is subtracted from the face of the existing $111,193.20 note. The principal shall be payable in ten equal annual installments from January 2, 1970. The court should then enter a judgment of foreclosure against appellants in the amount of unpaid principal and interest accrued to date under the promissory note, as refigured, and directing the execution of a new note to replace the one executed on August 14, 1970.
McNULTY, A. C. J., and BOARDMAN, J., concur.