561 So.2d 297 (1990)
Claude V. PITTS, Jr., Appellant,
v.
Corrado PASTORE and Lucille Pastore, His Wife, Appellees.
No. 88-03141.
District Court of Appeal of Florida, Second District.
January 5, 1990.
*298 Jerome D. Kasriel of Piper, Esteva, Karvonen & Lewis, St. Petersburg, for appellant.
Joseph C. Whitelock of Zewadski & Whitelock, P.A., St. Petersburg, for appellees.
ALTENBERND, Judge.
Claude V. Pitts, Jr., appeals a final judgment of foreclosure on his home. The judgment arises from a mortgage which he gave to his neighbors, Mr. and Mrs. Pastore. We affirm the final judgment as to the foreclosure of Mr. Pitts' home, but reverse and remand for recalculation of prejudgment interest.
Mr. Pitts and the Pastores lived in the same neighborhood and were good friends for many years. In March 1980, Mr. Pitts came to the Pastores and asked them for a loan of $20,000. He had an opportunity to open a dredging business and expected that the business would be very profitable. The Pastores agreed to give him a loan. On March 15, 1980, the Pastores loaned Mr. Pitts the money and he executed a $20,000 form promissory note which was payable on September 15, 1980, with interest at the rate of 12%. When September arrived, Mr. Pitts was unable to pay the promissory note. The Pastores loaned Mr. Pitts an additional $1,500 over the next few months because he was in "bad shape." There were no written promissory notes to evidence these additional loans.
Mrs. Pastore became increasingly concerned about the overdue loans. As a result, the Pastores had their attorney prepare a form mortgage to secure the loans. Mr. Pitts signed this mortgage on May 15, 1981. The mortgage states that it is given in consideration of the sum of $21,500, and describes Mr. Pitts' St. Petersburg home as the encumbered real property. In the mortgage, Mr. Pitts agrees to fully warrant title to the land and to waive the homestead exemption. The overdue promissory *299 note for $20,000 was attached to the mortgage, and both were recorded in Pinellas County on June 1, 1981.
At the time Mr. Pitts signed the mortgage, he was the sole owner of his home, but was also married and had children. His wife was his second. His children were born during his first marriage. They all lived in the home. There is no question that the home was homestead property in 1980 for purposes of article X, section 4, Florida Constitution (1968). His wife did not sign the mortgage, and it does not appear that she otherwise joined in the mortgage.
Mr. Pitts' dredging business did poorly. It is undisputed that his mortgage obligation went into default. In 1982, Mr. Pitts and his wife filed a joint bankruptcy petition. From this court's record, it cannot be determined whether the home was listed as exempt homestead property in the bankruptcy. The Pastores' loan, however, was listed as a third mortgage encumbering the home. The Pastores were treated as fully secured creditors in the bankruptcy and, thus, received no payment through the bankruptcy proceeding. The Pitts were discharged in bankruptcy on December 9, 1982.[1]
In addition to their financial difficulties, the Pitts also experienced marital difficulties. They were divorced a few days after their discharge in bankruptcy. At the time of the divorce, Mr. Pitts' children were adults and there is no evidence that the home was used to secure any divorce obligations owing to either his first or second wife. Sometime thereafter and before the filing of this foreclosure action, Mr. Pitts married for a third time.
Although the Pastores' right to seek a deficiency judgment was discharged by the bankruptcy, their right to enforce the mortgage against the house was not destroyed by the bankruptcy. 11 U.S.C. § 524. On July 29, 1986, the Pastores filed this foreclosure action against Mr. Pitts, his third wife, and his adult son who resided in the home. The trial court entered a final judgment in favor of the Pastores at the conclusion of a bench trial.
Three issues raised by Mr. Pitts warrant discussion.[2] First, Mr. Pitts contends that the statute of limitations, under section 95.281(1), Florida Statutes (1985), barred the Pastores' action.[3] Section 95.281(1) provides that a mortgage lien shall terminate:
(a) If the final maturity of an obligation secured by a mortgage is ascertainable from the record of it, 5 years after the date of maturity.
(b) If the final maturity of an obligation secured by a mortgage is not ascertainable from the record of it, 20 years after the date of the mortgage... .
In this case, the promissory note was overdue when it was recorded. The conflicting language of the overdue promissory note and the recorded mortgage does not allow one to determine the final maturity date of the obligation from the county records. Instead, the documents strongly indicate, as the trial court found, that the overdue promissory note had been extended to a future date not disclosed in the county records. Accordingly, the trial court correctly applied the twenty-year statute of limitations.
*300 Second, Mr. Pitts contends that his homestead defense precluded the trial court from granting the Pastores' foreclosure remedy. Specifically, Mr. Pitts argues that the mortgage has always been "void" because his second wife did not sign it. The trial court held that the mortgage became effectual at the time of the Pitts' divorce. This analysis requires the mortgage to have been a valid agreement when it was executed, and to have remained dormant as an executory contract and ineffectual as a lien until the marriage was terminated. Strictly speaking, the trial court's analysis requires the mortgage to have been, at most, "voidable" when executed rather than "void."
There is this difference between the two words "void" and "voidable": void in the strict sense means that an instrument or transaction is nugatory and ineffectual so that nothing can cure it; voidable exists when an imperfection or defect can be cured by the act or confirmation of him who could take advantage of it. The term "void," however, as applicable to conveyances or other agreements, has not at all times been used with technical precision, nor restricted to its peculiar and limited sense, as contradistinguished from "voidable"; it being frequently introduced, even by legal writers and jurists, when the purpose is nothing further than to indicate that a contract was invalid, and not binding in law. But the distinction between the terms "void" and "voidable," in their application to contracts, is often one of great practical importance; and, whenever entire technical accuracy is required, the term "void" can only be properly applied to those contracts that are of no effect whatsoever, such as are a mere nullity, and incapable of confirmation or ratification.
Black's Law Dictionary 1411 (5th ed. 1979).
There is a body of Florida case law which indicates that a deed or mortgage against homestead given to a third party is "void" or "void ab initio,"[4] "invalid,"[5] or a "nullity,"[6] if it is not joined by the spouse. Other cases indicate that such a deed or mortgage is "ineffective."[7] Still, other cases refer to the deed or mortgage as "voidable" or voidable from the perspective of a particular party.[8] Finally, other cases state the joinder requirement without describing the nature of the defective deed or mortgage.[9]
The Florida Constitution does not describe such a defective mortgage as either void or voidable. The constitution merely states:
The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage... .
Art. X, § 4, Fla. Const. (1968).[10] The constitution does not prohibit the owner of homestead property from entering into contracts without the joinder of the spouse. The constitution simply requires the owner's spouse to join in any alienation of homestead property.
Unlike a deed, which is an executed contract, a mortgage is an executory contract. Thus, the same principles of law do not necessarily apply to both. Fla. Nat'l Bank *301 & Trust Co. of Miami v. Brown, 47 So.2d 748, 760 (Fla. 1949). Since a deed of homestead property which is not joined by the spouse purports to alienate or transfer the homestead as a completed contract, the constitution may require that a defective homestead deed is void. See Robbins v. Robbins, 360 So.2d 10 (Fla. 2d DCA), appeal dismissed, 365 So.2d 714 (Fla. 1978).[11]
A mortgage, on the other hand, involves two separate concepts. It is an executory contract or agreement in which one generally promises to allow a future sale of real property if a debt is not paid. It is also a specific lien on the property described in the mortgage. § 697.02, Fla. Stat. (1987). It is well established that one can enter into a mortgage agreement to create a lien against property which the mortgagor will only acquire in the future. McCampbell Furniture Stores v. Cent. Farmers' Trust Co., 117 Fla. 351, 158 So. 283 (1934). Such a mortgage lien simply fails to attach until the property is purchased. See generally §§ 679.204, .303, Fla. Stat. (1987). Likewise, a mortgage with covenants of warranty, such as the mortgage involved in this case, permits any title acquired by the mortgagor, after the execution of the mortgage, to inure to the benefit of the mortgagee. Fla. Land Inv. Co. v. Williams, 84 Fla. 157, 92 So. 876 (1922).
We believe that the salutary purposes of article X, section 4, Florida Constitution (1968), can be fully achieved if the mortgage is ineffectual as a lien until such time as either the spouse joins in the alienation or the property loses its homestead status. The constitution does not require the mortgage agreement to have no legal force or binding effect as a contract. Just as Mr. Pitts could enter into an agreement to mortgage after-acquired property, he could also enter into an agreement to mortgage his homestead property, if and when his property would permit the attachment of a mortgage lien.[12]
Mr. Pitts argues that this analysis relies upon the reasoning of Hillman v. McCutchen, 166 So.2d 611 (Fla. 3d DCA), cert. denied, 171 So.2d 391 (Fla. 1964), which was expressly disapproved in Sharp v. Hamilton, 520 So.2d 9 (Fla. 1988). The supreme court's decision in Sharp disapproved the "twinkling of a legal eye" analysis in Hillman, which placed a creditor in a position superior to a spouse concerning homestead property that was transferred during a divorce proceeding. Unlike Hillman, our decision does not disadvantage the wife or any family member entitled to homestead protection.
The supreme court decision in Sharp did not disapprove that portion of Hillman which held that a mortgage of jointly owned property is not void when it is signed only by the husband. As to this issue, the Third District held:
[A] mortgage on an estate by the entirety executed by only one of the owners is ineffective as a mortgage of an interest in the property so long as the estate by the entirety exists, but this does not mean that the warranty contained in the mortgage was ineffective as a contract between the parties. This warranty is effective as an expression of an intention to create a lien on the mortgagor's interest for the debt. The ineffectiveness of the mortgage at its inception does not affect the fact that an equity arises in the mortgagee who accepts the ineffective security. We therefore hold that the mortgage between the husband and the plaintiff was effective to secure the after-acquired title.
Hillman, 166 So.2d at 613. Just as a mortgage of jointly owned property can attach as a mortgage lien of after-acquired property when the mortgagor receives sole title, *302 this mortgage lien attached when the property's homestead status came to an end.
Finally, Mr. Pitts contends that the trial court erred in calculating prejudgment interest. We agree. The trial court awarded compounded interest rather than simple interest. Although the $20,000 promissory note provides for 12% interest "per annum," and interest on "deferred interest payments," it does not expressly provide for the compounding of interest on a periodic basis. In light of the extension on the overdue note, it is unclear when interest was due and what interest was "deferred." See Morgan v. Mortgage Discount Co., 100 Fla. 124, 129 So. 589 (1930). Thus, the Pastores are entitled to only simple interest. Accordingly, we reverse the final judgment's award of prejudgment interest and remand for recalculation.
Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.
CAMPBELL, C.J., and PARKER, J., concur.
NOTES
[1] In the bankruptcy proceeding, Mrs. Pitts signed a schedule of debts which acknowledged the Pastores' debt as a secured obligation against the home. The record does not indicate any attempt by Mrs. Pitts to avoid the mortgage against her homestead in the bankruptcy proceeding. Mrs. Pitts did not testify in this case. Thus, it is conceivable that she "joined" in the mortgage at the time of the bankruptcy, but our record does not permit that finding.
[2] We reject Mr. Pitts' argument that the trial court abused its discretion by not dismissing this case for failure to prosecute. The record contains evidence to support the trial court's finding that this failure related to Mr. Pastore's poor health. See Schlakman v. Helliwell, Melrose, & DeWolf, 519 So.2d 14 (Fla. 3d DCA 1987).
[3] Mr. Pitts did not raise or argue a statute of limitations defense based on section 95.11(2)(c), Florida Statutes (1985). Since the loans, as extended by the mortgage, had no specific maturity date and the Pastores' demands to pay were not in writing, this statute provides no aid to Mr. Pitts. § 95.031(1), Fla. Stat. (1985); Smith v. Branch, 391 So.2d 797 (Fla. 2d DCA 1980).
[4] Robbins v. Robbins, 411 So.2d 1024 (Fla. 2d DCA), review dismissed, 417 So.2d 330 (Fla. 1982); Robbins v. Robbins, 360 So.2d 10 (Fla. 2d DCA), appeal dismissed, 365 So.2d 714 (Fla. 1978); Heath v. First Nat'l Bank in Milton, 213 So.2d 883 (Fla. 1st DCA 1968).
[5] Estep v. Herring, 154 Fla. 653, 18 So.2d 683 (1944); Bigelow v. Dunphe, 143 Fla. 603, 197 So. 328 (1940).
[6] Thomas v. Craft, 55 Fla. 842, 46 So. 594 (1908).
[7] Thomas v. Craft, 55 Fla. 842, 46 So. 594 (1908); Walker v. Walker, 336 So.2d 1259 (Fla. 2d DCA 1976) (husband's execution of a deed without the joinder of his wife was "ineffective to defeat the rights of the wife"); Smith v. Smith, 375 So.2d 1138 (Fla. 3d DCA 1979).
[8] Robbins v. Robbins, 360 So.2d 10 (Fla. 2d DCA), appeal dismissed, 365 So.2d 714 (Fla. 1978).
[9] Jameson v. Jameson, 387 So.2d 351 (Fla. 1980); Jones v. Fed. Farm Mortgage Corp., 138 Fla. 65, 188 So. 804 (1939).
[10] The 1985 amendment of this constitutional provision is not involved in this case, but it would not appear to alter the reasoning of this case. Art. X, § 4, Fla. Const. (1987).
[11] Although not at issue in this case, it seems logical that a contract for sale of homestead property signed only by the husband might well be enforceable after the loss of the homestead exemption. Thus, a spouse might enter into an agreement before the conclusion of a divorce to sell a home at a later date. While the courts could not provide a remedy to the buyer so long as the homestead exemption prohibited alienation, one suspects that the agreement would not be a void agreement.
[12] Since the lien attached prior to Mr. Pitts' third marriage, that marriage does not invalidate the lien. Bessemer v. Gersten, 381 So.2d 1344 (Fla. 1980).